**Cordelia Denise MIXON, a minor, By and Through her next friend, Eunice Carter, and Laverne Crawford, a/k/a Laverne Williams, Individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Oliver J. KELLER, Secretary, Department of Health and Rehabilitative Services, State of Florida, Defendant.**

**No. 74–111–Civ–J–T.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Feb. 28, 1974.

---

Alan A. Alop, Steven M. Goldstein, Duval County Legal Aid Assn., Jacksonville, Fla., for plaintiffs.

Eve Dunkerley Peck, Chester G. Senf, Jacksonville, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN H. WOOD, Jr., District Judge, Sitting by Designation.

·On this 28th day of February, 1974, came on to be considered the above

styled and numbered cause. Plaintiffs in this cause of action are in their final months of pregnancy and claim a need for pre-natal care in the form of financial benefits. They allege they are otherwise eligible for aid under the Social Security Act, but have been or would be denied assistance for their unborn fetuses. Plaintiffs seek declaratory and injunctive relief against the State of Florida to force the Secretary of the Department of Health and Rehabilitative Services to grant benefits under the Social Security Act, 42 U.S.C. § 601 et seq., to unborn fetuses as part and parcel of financial aid normally provided to families with dependent children (AFDC). Plaintiffs further request the Court to certify this cause as a class action. Jurisdiction is based on 42 U.S.C. § 1983, and 28 U.S.C. § 1343(3), (4) as a civil rights action and an alleged denial of equal protection under the Fourteenth Amendment to the United States Constitution. The Defendant has filed a Motion to Dismiss contending plaintiffs lack standing to bring this suit pursuant to Rule 41, F.R.Civ.P.

The Court has fully considered the memoranda of authorities relied upon by the parties, the testimony of the witnesses and the argument of counsel wherein the facts and law have been thoroughly developed in all respects.

At the outset, the Court finds defendant's Motion to Dismiss should be denied. While technically the plaintiffs may not have made a formal application for AFDC benefits as contemplated under the program, the law and this Court will not require the performance of a useless act as a condition precedent for filing this suit. The evidence is clear and undisputed that the State of Florida has not elected to provide benefits to an unborn child so that the bureaucratic prerequisite of filing a formal application for such payments would indeed be an exercise in futility. The State's position as regards standing and justiciable controversy is without merit.

As concerns the class action aspect of the case at Bar, plaintiffs concede that no evidence has been presented to the Court on the matter, and accordingly the request to certify a class for the purposes of this litigation is hereby denied.

At the crux of this case is the Handbook of Public Assistance Administration, Part IV, § 3412, of the Department of Health, Education and Welfare (H. E. W.) which includes an unborn fetus under the definition of "child" where a mother's pregnancy has been medically diagnosed. H. E. W. has given the option to state welfare agencies throughout the nation to provide benefits to such "children" and as has been stated, Florida has chosen not to participate in such a program. Plaintiffs contend that the H. E. W. definition is proper in all respects, but that no option or election to provide benefits to unborn fetuses *vel non* is contemplated or permissible under the Social Security Act and that such an option violates the Equal Protection Clause of the Fourteenth Amendment. Defendants contend that the State has not violated the letter or spirit of the Act nor the regulations of the H. E. W. However, defendants allege that the H. E. W. has illegally expanded the intent of the Social Security Act to include unborn fetuses. The State of Florida also contends that the local state option is beyond the authority of H. E. W., but that Florida has not adopted these benefits and should not be required to do so.

It is a well-settled principle of judicial construction that the meaning of a word or phrases used in a statute must be construed by examining the entire piece of legislation as well as its legislative history. Saxon v. Georgia Association of Independent Insurance Agents, 399 F.2d 1010 (5th Cir. 1968).

Title IV of the Social Security Act, § 401 (Codified in 42 U.S.C. § 601) establishes a cooperative Federal-State Welfare program designed:

"For the purpose of encouraging the care of dependent children in their

own homes or in the home of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children. . . . "

The term "dependent child" is defined in 42 U.S.C. § 606(a) to mean:

"The term 'dependent child' means a *needy child* (1) *who has been deprived of parental support or care* by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is *living* with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more such relatives as his or their own home, and (2) who is (a) under the age of eighteen, or (b) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a . . . course of vocational or technical training designed to fit him for gainful employment." (Emphasis supplied.)

■ The plain language of the Social Security Act *appears to exclude fetuses.* It is obviously impossible to encourage the care of a fetus in the home of a relative other than the mother.

Other portions of the Act also make sense only if the term *"child"* is limited to *born children,* not fetuses or embryos. For instance:

1. 42 U.S.C. § 602(a)(7) and (8) require consideration of the child's income and resources in establishing the amount of assistance.

2. 42 U.S.C. § 602(a)(11) requires notice to law enforcement officials when the State furnishes AFDC to a "child who has been deserted or abandoned by a parent."

3. 42 U.S.C. § 602(a)(17) requires the State to attempt to establish the paternity of a child *born* out of wedlock.

■ The Social Security Act is clear on its face and that H. E. W. in its decision to allow options within the implementing regulations has made an administrative decision which expands the Act. This was succinctly stated by the Court in Parks v. Harden, 354 F.Supp. 620 (N. D.Ga.1973), at pages 623 and 624:

"As a matter of semantics, there simply is no way to conclude that the word 'child' includes something else which is not a 'child,' namely an unborn child. In legal terms, the unborn *child is normally referred to as a fetus,* or 'quick', or *in utero* and the court knows of no cases which confer a legal right on an unborn child as such, . . . "

The plaintiffs' own expert, Dr. R. Donald Garrison, a recognized authority in the field of pre-natal medicine and pediatrics, testified that fetuses are never referred to medically or clinically as children, unborn or otherwise; and that a woman is not a mother until she has produced a live child.

In normal conversational usage, "child" does not mean fetus. Plaintiffs wish to say that "child" and "fetus" are interchangeable, which is simply not the case. A woman is not considered to *have* a child when she is carrying a fetus—she is *expecting* a child.

Certainly those members of Congress responsible for the drafting and passage of this legislation were not so naive, unversed or shortsighted in medical terminology to ignore or omit the term "fetus" where it is alleged they specifically intended to include the same. Such an omission from Title IV could only be intentional when one examines Title V of the Social Security Act where Congress specifically includes mention of pre-natal care and prospective motherhood and child-bearing.

■ Thus, under the undisputed evidence in this case, the applicant medically and legally speaking cannot be a "mother" as contemplated by the definition of "dependent child" under 42 U.S.

C. § 606(a) supra, until the actual birth of the "child".

Both Houses of the 92nd Congress recognized the existing H. E. W. practice of giving an option to the State as regards the inclusion of fetuses in the AFDC program, and indicate that under the proposed family assistance program in HR–1 (Codified as P.L. 93–603) which would have applied on a uniform basis nationally, but was not adopted, that unborn children would not and should not be included.

The House Ways and Means Committee report of H.R.–1, H.R. Report No. 92–231, states, at page 184:

"Your committee wants to make clear that an unborn child would not be included in the definition of a child. This will preclude the practice, now used in the AFDC program in some States, of finding that an unborn child does meet the definition, thereby establishing a 'family' even before the child is born."

The Senate Finance Committee report, Sen.Rep.No.92–1230, states at page 108:

"Regulations of the Department of Health, Education and Welfare *permit* Aid to Families with Dependent Children payments for a child who has not yet been born. The committee bill would make *unborn* children ineligible for AFDC." (Emphasis supplied.)

Congress recognizing that H. E. W. had overstepped itself clearly meant to correct the situation. Courts generally appear unaware that the reason the legislation was not passed was because the Congress decided to deal only with the Adult Categories of Public Assistance in HR–1. (P.L. 92–603). Therefore, all references to AFDC were set aside at that time. The Committee Reports of both Houses quoted above make clear the intent of Congress to force H. E. W. to delete the optional requirement and to force compliance with the intent and plain language of the Social Security Act.

The trilogy of cases continually cited by plaintiffs in this case, [Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L. Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968)], do not contain rulings contrary to defendant's position. The three cases in question deal with fact situations in which the respective State has excluded individuals specifically included in the plain language of the Social Security Act:

"More importantly, an examination of the cases relied on reveals that the rulings were bottomed not on a variance between the state plan and the H. E. W. Regulations, but on a variance between the state's standard and the Act of Congress itself. Thus, while some reliance was placed on administrative interpretation in *King*, the ultimate holding was that Alabama's substitute parent regulation conflicted with Congress's definition of 'parent' in 42 U.S.C. § 606(a)(1). Similarly, the Illinois proscription against aid to 18–20 year old college students was held to be at variance with the plain language of 42 U.S.C. § 606(a)(2)(B) in *Townsend*. Finally, in *Carleson*, California's exclusion of military personnel was held to violate the definition of 'continued absence' in 42 U.S.C. § 606(a)(1). In each instance, the result came about through an ascertainable variance between the state standard and that expressed in the language of the statute as adopted by the Congress." Parks v. Harden, supra page 623 of 354 F.Supp.

Under color of *Townsend, King,* and *Carleson*, plaintiffs have advanced the theory of "specific exclusion" saying that the fetus must be covered by the Social Security Act since unborns are not "specifically excluded" by the Act. This construction does violence to the actual intent expressed by the Supreme Court in the above cases. The attempt to shift the burden to the defendant to prove that an item not expressly excluded is thereby included is inverted logic and will not stand. Though the Su-

preme Court's statements were clear in the trilogy of cases, it has been necessary for them to further explain:

"In this context, the dissenting opinion's reliance on Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972), and King v. Smith, *supra* is misplaced. In those cases it was clear that state law *excluded* people from AFDC benefits whom the Social Security Act *expressly provided* would be eligible. The Court found no room either in the Act's language or legislative history to warrant the state's *additional* eligibility requirements." New York State Dept. of Social Services et al. v. Dublino et al., 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L. Ed.2d 688, 699 (1973). (Emphasis supplied.)

This cause has been heard and ruled upon by virtue of this opinion and order. The Court is fully aware of similar litigation spawned throughout the nation. There are currently two cases under advisement in the Northern and Southern Districts of Florida. While temporary injunctive relief was granted to certain named plaintiffs, no final determination has been made as regards the class action or the merits of the legal questions similarly presented in the instant case. Therefore, this Court is not bound by any precedent within the federal district courts of Florida or the Fifth Circuit Court of Appeals.

In light of the foregoing it is the opinion and finding of the Court that any and all relief requested by plaintiffs should be and the same is hereby and in all things denied. The plaintiffs have not met their burden of showing that irreparable harm will result if AFDC aid is not awarded. Furthermore, since the Court advanced the trial of this cause on the merits and consolidated it with the hearing on the motions for preliminary injunction, this opinion and order is dispositive of all issues raised in the case and plaintiffs may seek immediate appeal or relief from the Court of Appeals.

without further ado. While no evidence was presented concerning the class action aspect of this litigation and the Court had no alternative but to deny certification of a class, it nevertheless follows that a denial of relief to the named plaintiffs herein would also act as a denial to those who may be similarly situated.