BURNS, COMMISSIONER, DEPARTMENT OF
SOCIAL SERVICES OF IOWA, ET AL.
*v.* ALCALA ET AL.

No. 73-1708.   Argued January 22, 1975—Decided March 18, 1975

*Richard C. Turner,* Attorney General of Iowa, argued the cause for petitioners. With him on the brief was *Lorna Lawhead Williams,* Special Assistant Attorney General.

*Robert Bartels* argued the cause and filed a brief for respondents.*

MR. JUSTICE POWELL delivered the opinion of the Court.

The question presented by this case is whether States receiving federal financial aid under the program of Aid to Families with Dependent Children (AFDC) must

---

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General Bork, Keith A. Jones,* and *John B. Rhinelander* for the United States; by *Robert L. Shevin,* Attorney General, *Eva Dunkerley Peck,* and *Chester G. Senf* for the State of Florida; by *Andrew P. Miller,* Attorney General of Virginia, and *Stuart H. Dunn* and *Karen C. Kincannon,* Assistant Attorneys General, for Lukhard, Director of the Department of Welfare, Commonwealth of Virginia; and by *Ronald A. Zumbrun* and *John H. Findley* for the Pacific Legal Foundation.

*George R. Moscone* filed a brief for the American Association for Maternal and Child Health et al. as *amici curiae* urging affirmance.

offer welfare benefits to pregnant women for their unborn children. As the case comes to this Court, the issue is solely one of statutory interpretation.

## I

Respondents, residents of Iowa, were pregnant at the time they filed this action. Their circumstances were such that their children would be eligible for AFDC benefits upon birth. They applied for welfare assistance but were refused on the ground that they had no "dependent children" eligible for the AFDC program. Respondents then filed this action against petitioners, Iowa welfare officials. On behalf of themselves and other women similarly situated, respondents contended that the Iowa policy of denying benefits to unborn children conflicted with the federal standard of eligibility under § 406 (a) of the Social Security Act, as amended, 42 U. S. C. § 606 (a), and resulted in a denial of due process and equal protection under the Fourteenth Amendment.[1] The District Court certified the class and granted declaratory and injunctive relief. The court held that unborn children are "dependent children" within the meaning of § 406 (a) and that by denying them AFDC benefits Iowa had departed impermissibly from the federal standard of eligibility. The District Court did not reach respondents' constitutional claims. 362 F. Supp. 180 (SD Iowa 1973). The Court of Appeals for the Eighth Circuit affirmed. 494 F. 2d 743 (1974). We granted certiorari to resolve the conflict among the federal courts that have considered the question.[2] 419 U. S. 823. We

[1] The complaint was framed under 42 U. S. C. § 1983, and jurisdiction in the District Court was based on 28 U. S. C. § 1343 (3). See *Hagans* v. *Lavine,* 415 U. S. 528 (1974).

[2] The cases are cited in *Parks* v. *Harden,* 504 F. 2d 861, 863 n. 4 (CA5 1974).

conclude that the statutory term "dependent child" does not include unborn children, and we reverse.

## II

The Court has held that under § 402 (a)(10) of the Social Security Act, 42 U. S. C. § 602 (a)(10), federal participation in state AFDC programs is conditioned on the State's offering benefits to all persons who are eligible under federal standards. The State must provide benefits to all individuals who meet the federal definition of "dependent child" and who are "needy" under state standards, unless they are excluded or aid is made optional by another provision of the Act. *New York Dept. of Social Services* v. *Dublino,* 413 U. S. 405, 421–422 (1973); *Carleson* v. *Remillard,* 406 U. S. 598 (1972); *Townsend* v. *Swank,* 404 U. S. 282 (1971); *King* v. *Smith,* 392 U. S. 309 (1968). The definition of "dependent child" appears in § 406 (a) of the Act:

> "The term 'dependent child' means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment . . . ." 42 U. S. C. § 606 (a).

The section makes no mention of pregnant women or unborn children as such.

Respondents contend, citing dictionary definitions,[3] that the word "child" can be used to include unborn children. This is enough, they say, to make the statute ambiguous and to justify construing the term "dependent child" in light of legislative purposes and administrative interpretation.[4] They argue that both factors support their position in this case. First, paying benefits to needy pregnant women would further the purpose of the AFDC program because it would enable them to safeguard the health of their children through prenatal care and adequate nutrition. Second, for over 30 years the Department of Health, Education, and Welfare (HEW) has offered States an option to claim federal matching funds for AFDC payments to pregnant women.[5]

---

[3] *E. g.*, Webster's Third New International Dictionary (1961), which includes as one definition of "child," "an unborn or recently born human being: FETUS, INFANT, BABY." This, of course, is only one of many definitions for the word "child," and its use with reference to unborn children is not the most frequent. Webster's New International Dictionary (2d ed. 1957) qualified the definition quoted above by adding: "now chiefly in phrases. Cf. WITH CHILD, CHILDBIRTH." Respondents have candidly furnished citations to other current dictionaries that do not indicate that the word "child" is used to refer to unborn children. Respondents acknowledge that reliance on dictionaries cannot solve the question presented in this case. At most, the dictionaries demonstrate the possible ambiguity in the term "dependent child."

[4] See *United States* v. *Southern Ute Indians,* 402 U. S. 159, 173 n. 8 (1971); *Studebaker* v. *Perry,* 184 U. S. 258, 269 (1902); *Merritt* v. *Welsh,* 104 U. S. 694, 702–703 (1882).

[5] The current regulation provides that "[f]ederal financial participation is available in . . . [p]ayments with respect to an unborn child when the fact of pregnancy has been determined by medical diagnosis." 45 CFR § 233.90 (c) (2) (ii). Although the regulation itself does not say expressly that aid to unborn children is optional with the States, HEW's administrative practice makes clear

## A

Several of the courts that have faced this issue have read *King, Townsend,* and *Carleson, supra,* to establish a special rule of construction applicable to Social Security Act provisions governing AFDC eligibility. They have held that persons who are arguably included in the federal eligibility standard must be deemed eligible unless the Act or its legislative history clearly exhibits an intent to exclude them from coverage, in effect creating a presumption of coverage when the statute is ambiguous. See *Carver* v. *Hooker,* 369 F. Supp. 204, 210–215 (NH 1973), aff'd, 501 F. 2d 1244 (CA1 1974); *Stuart* v. *Canary,* 367 F. Supp. 1343, 1345 (ND Ohio 1973); *Green* v. *Stanton,* 364 F. Supp. 123, 125–126 (ND Ind. 1973), aff'd *sub nom. Wilson* v. *Weaver,* 499 F. 2d 155 (CA7 1974). But see *Mixon* v. *Keller,* 372 F. Supp. 51, 55 (MD Fla. 1974). This departure from ordinary principles of statutory interpretation is not supported by the Court's prior decisions. *King, Townsend,* and *Carleson* establish only that once the federal standard of eligibility is defined, a participating State may not deny aid to persons who come within it in the absence of a clear indication that Congress meant the coverage to be optional. The method of analysis used to define the federal standard of eligibility is no different from that used in solving any other problem of statutory construction.

Our analysis of the Social Security Act does not support a conclusion that the legislative definition of "dependent child" includes unborn children. Following the axiom that words used in a statute are to be given their ordinary meaning in the absence of persuasive reasons

---

that this regulation allows States to exclude unborn children from their AFDC programs. As of 1971 HEW had approved 34 state plans, including Iowa's, that furnished no aid to unborn children. 494 F. 2d 743, 745 (CA8 1974).

to the contrary, *Banks* v. *Chicago Grain Trimmers*, 390 U. S. 459, 465 (1968); *Minor* v. *Mechanics Bank of Alexandria*, 1 Pet. 46, 64 (1828), and reading the definition of "dependent child" in its statutory context, we conclude that Congress used the word "child" to refer to an individual already born, with an existence separate from its mother.

As originally enacted in 1935, the Social Security Act made no provision for the needs of the adult taking care of a "dependent child." It authorized aid only for the child and offered none to support the mother.[6] C. 531, § 406, 49 Stat. 629. The Act expressly contemplated that the first eligible child in a family would receive greater benefits than succeeding children, recognizing the lower per capita cost of support in families with more than one child, § 403 (a), but the Act included no similar provision recognizing the incremental cost to a pregnant woman of supporting her "child." The Act also spoke of children "living with" designated relatives, § 406 (a), and referred to residency requirements dependent on the child's place of birth. § 402 (b). These provisions would apply awkwardly, if at all, to pregnant women and unborn children. The failure to provide explicitly for the special circumstances of pregnant women strongly suggests that Congress had no thought of providing AFDC benefits to "dependent children" before birth.[7]

The purposes of the Act also are persuasive. The AFDC program was originally conceived to substitute for the practice of removing needy children from

---

[6] The Act was amended in 1950 to authorize payment for the needs of the child's caretaker. Act of Aug. 28, 1950, § 323, 64 Stat. 551.

[7] A number of other provisions of the Act would be similarly inapplicable to unborn children. See *Murrow* v. *Clifford*, 502 F. 2d 1066, 1075–1076 (CA3 1974) (Rosenn, J., concurring and dissenting).

their homes and placing them in institutions, and to free widowed and divorced mothers from the necessity of working, so that they could remain home to supervise their children. This purpose is expressed clearly in President Roosevelt's message to Congress recommending the legislation, H. R. Doc. No. 81, 74th Cong., 1st Sess., 29–30 (1935), and in committee reports in both Houses of Congress, S. Rep. No. 628, 74th Cong., 1st Sess., 16–17 (1935); H. R. Rep. No. 615, 74th Cong., 1st Sess., 10 (1935). See *Wisdom* v. *Norton,* 507 F. 2d 750, 754–755 (CA2 1974); Note, Eligibility of the Unborn for AFDC Benefits: The Statutory and Constitutional Issues, 54 B. U. L. Rev. 945, 955–958 (1974). The restricted purpose of the AFDC program is evidenced in the Act itself by the limitations on aid. The Act originally authorized aid only for children living with designated relatives.[8] The list of relatives has grown, *supra,* at 578, but there is still no general provision for AFDC payments to needy children living with distant relatives or unrelated·persons, or in institutions.[9]

---

[8] The original definition of "dependent child" was:
"a child under the age of sixteen who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, or aunt, in a place of residence maintained by one or more of such relatives as his or their own home . . . ." § 406 (a), 49 Stat. 629.

[9] The Act now authorizes, in addition to payments for children in the homes of designated relatives, foster care payments for children who have been removed from the homes of relatives. 42 U. S. C. § 608. It also provides financial support for child-welfare services, in a form different from the direct payments in the general AFDC program, for "homeless, dependent, or neglected children." 42 U. S. C. §§ 622, 625.

The statement of purposes in the Act, amended several times since

Congress did not ignore the needs of pregnant women or the desirability of adequate prenatal care. In Title V of the Social Security Act, now codified as 42 U. S. C. §§ 701–708 (1970 ed. and Supp. III), Congress provided federal funding for prenatal and postnatal health services to mothers and infants, explicitly designed to reduce infant and maternal mortality.[10] See S. Rep. No. 628, *supra,* at 20. In selecting this form of aid for pregnant women, Congress had before it proposals to follow the lead of some European countries that provided "maternity benefits" to support expectant mothers for a specified period before and after childbirth. Hearings on S. 1130 before the Senate Committee on Finance, 74th Cong., 1st Sess., 182, 965–971 (1935). If Congress had intended to include a similar program in the Social Security Act, it very likely would have done so explicitly

---

1935, still indicates that Congress has not undertaken to provide support for all needy children:

"For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection . . . ." 42 U. S. C. § 601.

[10] As Judge Weinfeld's opinion for the Second Circuit in *Wisdom* v. *Norton,* 507 F. 2d 750, 755 (1974), points out, one of the major reasons for making welfare payments on behalf of an unborn child would be to enable its mother to purchase adequate prenatal care. The fact that Congress explicitly provided medical care for expectant mothers in Title V is evidence "of a congressional intent *not* to include unborn children under AFDC but to provide for maternity care in a different section of the statute." *Id.,* at 755 n. 27.

rather than by relying on the term "dependent child," at best a highly ambiguous way to refer to unborn children.

## B

Respondents have also relied on HEW's regulation allowing payment of AFDC benefits on behalf of unborn children. They ask us to defer to the agency's long-standing interpretation of the statute it administers. Respondents have provided the Court with copies of letters and interoffice memoranda that preceded adoption of this policy in 1941 by HEW's predecessor, the Bureau of Public Assistance. These papers suggest that the agency initially may have taken the position that the statutory phrase "dependent children" included unborn children.[11]

A brief filed by the Solicitor General on behalf of HEW in this case disavows respondents' interpretation of the Act. HEW contends that unborn children are not included in the federal eligibility standard and that the regulation authorizing federal participation in AFDC payments to pregnant women is based on the agency's general authority to make rules for efficient administration of the Act. 42 U. S. C. § 1302. The regulation is consistent with this explanation. It appears in a subsection with other rules authorizing temporary aid, at the option of the States, to individuals in the process of gaining or losing eligibility for the AFDC program. For example, one of the accompanying rules authorizes States to pay AFDC bene-

---

[11] At oral argument petitioners' counsel objected to the inclusion of these materials in respondents' brief, noting that they were not in the record and had not been authenticated. Tr. of Oral Arg. 43–45. Respondents suggested that at least some of the materials are proper subjects for judicial notice. In the view we take of the case these materials are not dispositive, and it is unnecessary to resolve their status.

fits to a relative 30 days before the eligible child comes to live in his home. 45 CFR § 233.90 (c)(2). HEW's current explanation of the regulation deprives respondents' argument of any significant support from the principle that accords persuasive weight to a consistent, longstanding interpretation of a statute by the agency charged with its administration. See *FMB* v. *Isbrandtsen Co.,* 356 U. S. 481, 499–500 (1958); *Burnet* v. *Chicago Portrait Co.,* 285 U. S. 1, 16 (1932).

Nor can respondents make a convincing claim of congressional acquiescence in HEW's prior policy. In 1972, in the context of major Social Security legislation, both Houses of Congress passed bills to revise the AFDC system. One section of the bill passed in the Senate would have amended the definition of "dependent child" expressly to exclude unborn children. H. R. 1, 92d Cong., 1st Sess. (1972) (as amended by Senate); 118 Cong. Rec. 33990, 33995 (1972); see S. Rep. No. 92–1230, pp. 108, 467 (1972). The House bill would have substituted an entirely new definition of eligibility under the Administration's "Family Assistance Plan." H. R. 1, 92d Cong., 1st Sess. (1972); 117 Cong. Rec. 21450, 21463 (1971). The accompanying committee report specified that under the new definition unborn children would not be eligible for aid. H. R. Rep. No. 92–231, p. 184 (1971). Both bills passed the respective Houses of Congress, but none of the AFDC amendments appeared in the final legislation, Pub. L. 92–603, 86 Stat. 1329, because the House and Senate conferees were unable to agree on the underlying principle of welfare reform. All efforts to amend AFDC were postponed for another session of Congress. See 118 Cong. Rec. 36813–36825, 36926–36936 (1972); *Mixon* v. *Keller,* 372 F. Supp., at 55. Under the circumstances, failure to enact the relatively minor provision relating to unborn children cannot be regarded as ap-

proval of HEW's practice of allowing optional benefits. To the extent this legislative history sheds any light on congressional intent, it tends to rebut the claim that Congress by silence has acquiesced in the former HEW view that unborn children are eligible for AFDC payments.[12]

## C

In this case respondents did not, and perhaps could not, challenge HEW's policy of allowing States the option of paying AFDC benefits to pregnant women. We therefore have no occasion to decide whether HEW has statutory authority to approve federal participation in state programs ancillary to those expressly provided in the Social Security Act, see *Wisdom* v. *Norton,* 507 F. 2d, at 756, or whether 42 U. S. C. § 1302 authorizes HEW to fund benefits for unborn children as a form of temporary aid to individuals who are in the process of qualifying under federal standards. See *Parks* v. *Harden,* 504 F. 2d 861, 875–877 (CA5 1974) (Ainsworth, J., dissenting).

---

[12] Several of the courts that have adopted the position urged here by respondents have interpreted the action of the 92d Congress as evidence of a "belief that unborn children are currently eligible under the Act 'and that only by amending its language can their status as eligible individuals be altered.'" *Parks* v. *Harden,* 504 F. 2d, at 872. See also *Carver* v. *Hooker,* 501 F. 2d 1244, 1247 (CA1 1974); *Wilson* v. *Weaver,* 358 F. Supp. 1147, 1155 (ND Ill. 1973), aff'd, 499 F. 2d 155 (CA7 1974). The House bill does not lend itself to this interpretation because it was not designed to amend the existing AFDC structure but to create an entirely different system. The Senate bill was framed as an amendment to the eligibility provisions in § 406 (a), but there is no evidence that its drafters believed unborn children were included in the existing definition of dependent children. It would be equally plausible to suppose that they thought HEW had misinterpreted the Act, and wanted to make the original intent clear. See *Wilson* v. *Weaver,* 499 F. 2d, at 161 (Pell, J., dissenting).

## III

Neither the District Court nor the Court of Appeals considered respondents' constitutional arguments. Rather than decide those questions here, where they have not been briefed and argued, we remand the case for consideration of the equal protection and due process issues that were raised but not decided below.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE MARSHALL, dissenting.

As the majority implicitly acknowledges, the evidence available to help resolve the issue of statutory construction presented by this case does not point decisively in either direction. When it passed the Social Security Act in 1935 Congress gave no indication that it meant to include or exclude unborn children from the definition of "dependent child." Nor has it shed any further light on the question other than to consider, and fail to pass, legislation that would indisputably have excluded unborn children from coverage.

The majority has parsed the language and touched on the legislative history of the Act in an effort to muster support for the view that unborn children were not meant to benefit from the Act. Even given its best face, however, this evidence provides only modest support for the majority's position. The lengthy course of administrative practice cuts quite the other way. Although the question is a close one, I agree with the conclusion reached by five of the six Courts of Appeals that have

considered this issue,[1] and would accordingly affirm the judgment below.

The majority makes only passing reference to the administrative practice of 30 years' duration, under which unborn children were deemed eligible for federal AFDC payments where state programs provided funds for them. According to the majority, this longstanding administrative practice is deprived of any significant weight by HEW's present suggestion that it has always treated unborn children as being outside the statutory definition of "dependent child." The agency's characterization of its former position, however, misrepresents the history of the administrative practice.

As early as 1941 the Bureau of Public Assistance faced the problem of whether unborn children were covered by § 406 (a) of the Act. At that time, the Board determined that under the Act federal funds could be provided to the States for aid to unborn children. The agency's governing regulation in the HEW Handbook of Public Assistance Administration expressly included unborn children among those eligible for aid "on the basis of the same eligibility conditions as apply to other children." Pt. IV, § 3412 (6) (1946). The language of the regulation and the inclusion of unborn children among five other classes of children eligible for AFDC payments under the definition of "dependent child" make it evident that the

---

[1] Besides the court below, the Courts of Appeals holding that unborn children are within the eligibility terms of § 406 (a) include the First, the Fourth, the Fifth, and the Seventh Circuits, see *Carver* v. *Hooker*, 501 F. 2d 1244 (CA1 1974); *Doe* v. *Lukhard*, 493 F. 2d 54 (CA4 1974); *Parks* v. *Harden*, 504 F. 2d 861 (CA5 1974); *Wilson* v. *Weaver*, 499 F. 2d 155 (CA7 1974). Only the Second Circuit has taken the opposite view, *Wisdom* v. *Norton*, 507 F. 2d 750 (1974).

agency deemed unborn children to come within the terms of § 406 (a) of the Act.[2]

This regulation remained unchanged until 1971, when it was placed in the Code of Federal Regulations as 45 CFR § 233.90 (c)(2)(ii). Although its language was altered somewhat, the regulation still provided that, in electing States, federal participation would be available for unborn children once the fact of pregnancy was confirmed by medical diagnosis. It was only when a series of lawsuits were filed seeking to have AFDC made available to unborn children in those States that did not provide for them in their local AFDC plans that the agency contended that unborn children were not really within the eligibility provisions of § 406 (a) after all.

After this Court's decisions in *King* v. *Smith,* 392 U. S. 309 (1968), *Townsend* v. *Swank,* 404 U. S. 282 (1971), and *Carleson* v. *Remillard,* 406 U. S. 598 (1972), it appeared obvious that if any class of potential beneficiaries was within the Act's eligibility provisions, the States were required to provide aid to them. Thus, if HEW had chosen to stick with its previous interpretation that unborn children were within the eligibility provision of § 406 (a), it would have had to require that all participating States grant benefits for unborn children. On the other hand, if it were determined that unborn children were not eligible under the Act, federal financing would not be available even in those States that provided

---

[2] Among the other "situations within the scope of the [statutory] term 'deprivation' [of parental support or care]" were "Children Living With Both Natural Parents," § 3412 (1); "Children Living With Either Father or Mother," § 3412 (2); and "Children of Unmarried Parents," § 3412 (5). In discussing the eligibility of the last group, the regulations noted: "The act provides for the use of aid to dependent children as a maintenance resource available on equal terms to all children who meet eligibility conditions." *Ibid.*

AFDC payments for them. In order to preserve the status quo, the agency came up with the inventive solution of ascribing the "unborn children" regulation to its rulemaking power under § 1102 of the Act, and thus avoiding the mandatory effects of a finding of "eligibility" under § 406 (a).

This ingenious but late-blooming tactical switch does little, in my view, to cancel out the effect of the long and consistent prior course of administrative interpretation of the Act. Since the agency's position in this case and related cases is evidently designed to preserve its authority to extend federal aid on an optional basis in spite of *King, Townsend,* and *Carleson,* I would view somewhat skeptically the agency's assertion that it has never deemed unborn children to be within the eligibility provisions of § 406 (a).

Even if the agency's new position is not discounted as a reaction to the exigencies of the moment, the policies underlying the doctrine of administrative interpretation require more than simply placing a thumb on the side of the scale that the agency currently favors.[3]  The agency's

---

[3] The reasons for assigning weight to an administrative agency's interpretation vary in part according to the role that Congress intended the agency to play in the lawmaking process. Where the act in question is an open-ended statute under which Congress did not "bring to a close the making of the law," but left the "rounding out of its command to another, smaller and specialized agency," *FTC* v. *Ruberoid Co.,* 343 U. S. 470, 486 (1952) (Jackson, J., dissenting), the agency's shift in position, even at a late date, should be given substantial weight. See *NLRB* v. *J. Weingarten, Inc., ante,* at 265–266; *Phelps Dodge Corp.* v. *NLRB,* 313 U. S. 177, 193–194 (1941). Plainly, however, Congress did not intend the term "dependent child" in this detailed and often-amended statute to be subject to re-examination and redefinition as the agency's perceptions of social needs changed. In cases such as this one, where the agency is intended merely to carry out the congressional mandate, a long-standing course of administrative interpretation is relevant primarily

determination that unborn children are eligible for matching federal aid was made early in the life of the program, and the administrators of the Act determined only a few years after the Act's passage that making AFDC payments available to unborn children was consistent with the statutory purposes. This contemporaneous and long-applied construction of the eligibility provision and purposes of the Act is entitled to great weight—particularly in the case of a statute that has been before the Congress repeatedly and has been amended numerous times. The majority contends that because of the details of the unsuccessful 1972 legislative effort to exclude unborn children from coverage, the respondents can claim little benefit from the natural inference that the statute still included them among those eligible for aid. This may be so, but in light of the history of the administrative interpretation of § 406 (a), I cannot agree that the Act, in its present form, should be read to exclude the unborn from eligibility.

I dissent.

---

as a contemporaneous construction of the Act by persons dealing intimately with its terms on a day-to-day basis.