**Dora TASKER, Richard Tasker, and Glenda Harper, Ricky Harper, on behalf of themselves and all others similarly situated, Appellants,**

v.

**Leon H. GINSBERG, Commissioner, West Virginia Department of Welfare; Arnold T. Margolin, Commissioner of Finance and Administration of the State of West Virginia; and Glen B. Gainer, Auditor of the State of West Virginia, Appellees.**

No. 82–1505.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1982.
Decided April 14, 1983.

---

Marge Krecke, Legal Aid Society of Charleston, Charleston, W. Va., for appellants.

Mary Beth Kershner, Asst. Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Atty. Gen., Charleston, W. Va., on brief), for appellees.

Before WIDENER, HALL and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

This class action is brought by low-income families in West Virginia against three public officials for alleged violations of the Social Security Act of 1935, as amended, 42 U.S.C. § 601 *et seq.* The plaintiffs (appellants here) charge that changes in state welfare policy implemented by defendant Ginsberg resulting in the disqualification of spouses of incapacitated and unemployed individuals from receiving money payments under the federal Aid to Families with Dependent Children ("AFDC") program violated federal statutory provisions and the supremacy clause of the United States Constitution. The trial judge held that because spouses of unemployed and incapacitated parents continue to receive Medicaid cards and food stamps, the federal requirement that all statutorily eligible individuals be furnished AFDC was not violated. We reverse.

I.

The class is represented by Dora and Richard Tasker and Glenda and Ricky Harper. The Taskers are residents of West Virginia and have one minor son. Due to the physical incapacitation of Mr. Tasker prior to 1981, the family became eligible for AFDC under 42 U.S.C. § 606(a) and (b) (1975).[1] The Harpers also reside in West Virginia and have one son. When Mr. Harper lost his job sometime prior to August 1,

---

1. Section 606 provides in relevant part:

When used in this part—

(a) The term "dependent child" means a needy child ... who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent....

(b) The term "aid to families with dependent children" means money payments with respect to a dependent child ... and includes (1) money payments or medical care or any type of remedial care recognized under State law to meet the needs of the relative with whom any dependent child is living (*and the spouse of such relative* if living with him and if such relative is the child's parent and the child is a dependent child by reason of the physical or mental incapacity of a parent or is a dependent child under section 607 of this title) ... (emphasis added).

*See also* 45 C.F.R. § 233.10 (1981).

1981, the Harper family qualified for AFDC. 42 U.S.C. § 607(a)(1976).[2]

In July, 1981, the Taskers and Harpers received notice from Ginsberg, Commissioner of the West Virginia Department of Welfare, that commencing August 1, spouses of incapacitated or unemployed parents would no longer be considered in the household head count to determine monthly money grants under AFDC. For the Taskers and Harpers, this meant a reduction in monthly cash benefits from $206.00, the amount granted three-member families, to $164.00, the amount granted two-member families. Ginsberg explained to the state's AFDC recipients that this policy change was necessitated by budgetary demands.

The plaintiffs brought suit claiming that Ginsberg and other state officials acted in violation of 42 U.S.C. § 602(a)(10) (1982), which provides that "aid to families with dependent children shall . . . be furnished with reasonable promptness to all eligible individuals." While Ginsberg concedes that Mrs. Tasker and Mrs. Harper are eligible for AFDC benefits under 42 U.S.C. §§ 606(b) and 607(a) and 45 C.F.R. §§ 233.-10 and 233.100, he contends that the receipt of a Medicaid card and food stamps by these spouses constitutes the receipt of AFDC. The district court, 538 F.Supp. 321, agreed.

## II.

On appeal, the Taskers and Harpers set out in detail the legislative history of AFDC to support their argument that Medicaid cards and food stamps cannot be regarded as benefits under AFDC, and consequently, that spouses of incapacitated and unemployed parents are being denied AFDC by the state of West Virginia.

When Congress instituted the AFDC program in 1935, 42 U.S.C. § 606(b) read:

The term "aid to families with dependent children" means money payments with respect to a dependent child.

Act of August 14, 1935, ch. 531, Title IV, § 406, 49 Stat. 629. In 1950, Congress amended the statute to read:

The term "aid to dependent children" means money payments with respect to, or medical care in behalf of or any type of remedial care recognized under state law in behalf of a dependent child or dependent children, and includes . . . money payments or medical care or any type of remedial care recognized under state law for any month to meet the needs of the relative with whom any dependent child is living if money payments have been made under the state plan with respect to such child for such month.

Act of August 28, 1950, ch. 809, Title III, Pt. 2, § 323(a), 64 Stat. 551. The intent of this amendment was to permit states to make payments directly to providers or vendors of medical care. Previously, states could provide for a child's medical care only by making a money payment to his or her caretaker and relying on the caretaker to pay the provider of medical care. S.Rep. No. 1669, 81st Cong., 2d Sess., *reprinted in* [1950] U.S.Code Congressional Service, 3287, 3296. Additionally, the inclusion of the term "remedial care" was to "make it clear that assistance includes the services of Christian Science practitioners" or any other branch of the healing arts recognized by state law. Conf.Rep. No. 2771, 81st Cong., 1st Sess., *reprinted in* [1950] U.S.Code Congressional Service 3482, 3509. The revised statute did not require states to choose between money payments for the child's subsistence and medical care; the state could receive federal assistance in both forms. This revision also authorized states to extend AFDC coverage to include the caretaker relative with whom a child was living.

---

2. Section 607 provides in relevant part:

(a) The term "dependent child" shall, notwithstanding section 606(a) of this title, include a needy child . . . who has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the

Secretary) of the parent who is the principal earner, and who is living with any of the relatives specified in section 606(a)(1) of this title in a place of residence maintained by one or more of such relatives as his (or their) own home.

*See also* 45 C.F.R. § 233.100 (1981).

In 1962, AFDC coverage was again expanded to encompass the spouses of unemployed or incapacitated parents.[3] The law remained unchanged that states could provide both money payments and medical care under AFDC with full federal participation.

However, the structure of federal welfare and health care assistance changed in 1965, when Congress passed the Medicaid statute, Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* For all intents and purposes, the enactment of Medicaid took "medical care" out of the scope of Title IV of the Act, the title under which AFDC is funded. Section 121(b) of Title XIX states:

> No payment may be made to any state under title I, IV, X, XIV, or XVI of the Social Security Act with respect to aid or assistance in the form of medical or any other types of remedial care for any period for which such state receives payments under title XIX of such Act, or for any period after December 31, 1969.[4]

Act of July 30, 1965, Pub.L. No. 89–97, § 121(b), 79 Stat. 352.

This statutory language is underscored by remarks in the legislative history:

> The Conference agreement would terminate all these existing programs on December 31, 1969, with the result that beginning in 1970, the only program of medical care that the States could have to which we could make a contribution would be the title XIX program, the Kerr-Mills program.

111 Cong.Rec. 17729 (1965) (remarks of Rep. Wilbur Mills).

Title XIX also establishes eligibility requirements for Medicaid which are independent of the eligibility requirements for AFDC. *Compare* 42 U.S.C. § 1396a(a)(10) (1975) *with* 42 U.S.C. §§ 606(a) and (b) and § 607.

■ States were given the option of becoming participants in the federal Medicaid program, and West Virginia has been a continuous participant since 1970. Today, West Virginia provides medical care and other remedial care to recipients of AFDC exclusively with the help of Title XIX funds and not AFDC funds.[5] The language in 42 U.S.C. § 606(b) referring to medical care assistance under AFDC is thus obsolete.

In the face of persuasive evidence that AFDC no longer encompasses "medical care" despite the unchanged language of § 606(b), Ginsberg asserts the judicial rule disfavoring repeal by implication set out in *Morton v. Mancari,* 417 U.S. 535, 549–50, 551, 94 S.Ct. 2474, 2482, 2483, 41 L.Ed.2d 290 (1974). In *Morton,* the Supreme Court held that the Indian Reorganization Act of 1934, which granted governmental employment preferences to native Americans, was not impliedly repealed by the Equal Employment Opportunity Act ("EEOA") of 1972, contrary to the claims of the non-Indian plaintiffs. Section 11 of the EEOA, 42 U.S.C. § 2000e–16(a), generally prohibited racial discrimination in federal employment, but nowhere in the statute or in the legislative history was there mention of the Indian preferences, and the Court declined to hold that section 11 impliedly repealed those preferences.

We are confronted with a much different situation here. Section 121(b) of Title XIX

---

**3.** Act of July 25, 1962, Pub.L. No. 87–543, § 109, 76 Stat. 190, *reprinted in* [1962] U.S. Code Cong. & Ad.News 237; *codified at* 42 U.S.C. § 606(b); *see* note 1, *supra.*

**4.** *See* 42 U.S.C. § 1396b historical note. The accompanying regulation, 45 C.F.R. § 233.145(a) (1981), states:

> Under the provisions of section 121(b) of Pub.L. 89–97, enacted July 30, 1965, no payment may be made to any State under title I, IV–A, X, XIV or XVI of the Social Security Act for aid or assistance in the form of medical or any other type of remedial care for any period after December 31, 1969. However, these provisions do not affect the availability of Federal financial participation in the cost of medical or remedial care furnished under title IV–A of the Act ... as emergency assistance to needy families with children.... Federal financial participation in vendor payments for medical care and services is not otherwise available except under title XIX of the Act.

**5.** Emergency medical assistance, which is not at issue in this case, still comes out of Title IV. *See* note 4, *supra.*

(as elaborated at 45 C.F.R. § 233.145(a), *supra) explicitly derogates* from the scope of 42 U.S.C. § 606(b) by declaring that medical assistance is no longer to be paid through AFDC. This is not, then, a case of repeal by implication. Congress has deliberately and effectively revoked the "medical care" provision in the AFDC statute by the establishment of a new health program with separate funding.

Ginsberg advances the identical argument with regard to the federal food stamp program. Food stamps, according to Ginsberg, are to be regarded as "remedial care" under § 606(b), and since the plaintiffs continue to receive food stamps, they are not additionally entitled to money payments because AFDC is to consist of money payments *or* medical care *or* remedial care under § 606(b).

We cannot accept this argument. As the above-quoted legislative history reveals, "remedial care" was envisioned as treatment provided to individuals refusing traditional medical assistance by those such as Christian Science practitioners. Plainly, food is not "remedial care." Furthermore, the federal food stamp program, like Medicaid, is distinct from AFDC, having separate funding and separate eligibility requirements. *See* 7 U.S.C. §§ 2011–2027 (1977); 7 C.F.R. § 270 *et seq.* The food stamps received by the Taskers and Harpers are completely unrelated to AFDC.

### III.

Although in the proceedings below Ginsberg conceded that Mrs. Tasker and Mrs. Harper are eligible for AFDC, he now suggests that the 1950 and 1962 amendments regarding coverage did not compel each state to count single parents and spouses of incapacitated parents in the computation of household grants, but rather Congress intended that if states elected to count spouses of the unemployed and incapacitated, the federal government would pay its full share. Ginsberg draws support from certain federal regulations which he claims must be accorded judicial deference if the agency action has a rational basis[6] in the statutory grant of authority. 45 C.F.R. § 237.50(b)(2) (1981) says that "[t]he recipient count *may* include all eligible children, plus the eligible relative with whom the children are living" (Ginsberg's emphasis), and 45 C.F.R. § 237.50(b)(3)(i) (1981) states that:

When at least one of the children in a family is eligible due to the incapacity of his parent in the home, the recipient count *may* include all eligible children, the parent, and the parent's spouse with whom the children are living.... (Ginsberg's emphasis).

Ginsberg reasons that since the clear intent of the AFDC statute is to provide for the care of needy children, the word "may" twice used in provisions of 45 C.F.R. § 237.50 does not mean that coverage of eligible children is optional; it must mean therefore that coverage of a child's *parents* is optional. Interpretive regulations by the federal administrative agency, Ginsberg notes, must be accorded great deference by the courts. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 796–97, 63 L.Ed.2d 22 (1980); *Board of Governors v. First Lincolnwood Corp.,* 439 U.S. 234, 251, 99 S.Ct. 505, 514, 58 L.Ed.2d 484 (1978); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

---

**6.** Ginsberg's reliance on the "rational basis" of certain interpretive regulations seems designed to rebut a constitutional charge that the West Virginia policy discriminates among AFDC recipients against the Taskers and Harpers in violation of equal protection. Social policy of the type Ginsberg defends here is subject to the "rational relation" test where no suspect classes or fundamental rights are involved. *See, e.g., Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). But although plaintiffs did challenge the actions of West Virginia on fourteenth amendment grounds below, they rest their appeal solely on a statutory and supremacy clause argument. Ginsberg's defense of the "rational basis" for West Virginia's change of policy is, therefore, irrelevant. Plaintiffs do not complain because they were singled out among AFDC recipients for unequal treatment; they complain because they feel federal statutory law has been abridged by the state of West Virginia.

Ginsberg is correct in asserting the validity of the regulations on which he relies. These provisions are rationally derived from the statute; indeed, they practically restate 42 U.S.C. § 606(b). But these regulations do not compel the conclusion Ginsberg urges, namely, that single parents may be excluded from household counts for AFDC. The permissive rather than mandatory language in the regulations Ginsberg cites is consistent with the voluntary nature of the entire AFDC program. A state may or may not choose to participate in AFDC. The language of these regulations merely establishes the federal government's pledge to pay its share for all eligible recipients. However, if a state accepts federal AFDC assistance, it must in return obey federal law. 42 U.S.C. § 602(a)(10) states unambiguously that "aid to families with dependent children shall ... be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. §§ 606(a) and 607 extend eligibility to incapacitated and unemployed parents, while 42 U.S.C. § 606(b) adds spouses of these individuals to the coverage of AFDC. Thus, inclusion of spouses of incapacitated and unemployed persons in the AFDC household head count is mandatory, not optional. *See Miller v. Youakim,* 440 U.S. 125, 134, 99 S.Ct. 957, 963, 59 L.Ed.2d 194 (1979); *Burns v. Alcala,* 420 U.S. 575, 580, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975); *Carleson v. Remillard,* 406 U.S. 598, 600, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352 (1972); *Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1970); *King v. Smith,* 392 U.S. 309, 328, 88 S.Ct. 2128, 2139, 20 L.Ed.2d 1118 (1968).

### IV.

Ginsberg's final argument is that West Virginia has not denied AFDC to any eligible person, but has simply reduced the level of benefits, which is a matter entrusted to the state. *King v. Smith,* 392 U.S. at 318–19, 88 S.Ct. at 2133–34.

Ginsberg's characterization of the revised West Virginia policy as a mere reduction of benefits is wrong. Mrs. Tasker and Mrs. Harper have been completely disqualified from AFDC money payments by the action of the state; they have not simply had their benefits reduced. Since the Medicaid and food stamps they receive come out of different programs, they now receive nothing under AFDC, and this violates 42 U.S.C. § 602(a)(10).

### V.

The decision of the district court is reversed. We remand to the district court for imposition of an order prospectively [7] enjoining defendants from denying AFDC money payments to the spouses of unemployed and incapacitated parents.

REVERSED AND REMANDED.

K.K. HALL, Circuit Judge, concurring:

I concur in both the reasoning and the result reached in the majority opinion. Moreover, I find in the plain language of 42 U.S.C. § 606(b)(1) an additional and compelling reason for reversing the decision of the district court. The statute on its face requires the spouse of the dependent child's caretaker relative to be treated in the same manner as that relative under the federal Aid to Families with Dependent Children (AFDC) program for incapacitated and unemployed parents:

> (b) The term "aid to families with dependent children" means money payments with respect to a dependent child ... and includes (1) money payments or medical care or any type of remedial care recognized under State law to meet the needs of the relative with whom any dependent child is living (*and the spouse of such relative* if living with him and if

---

7. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), instructs that we may not award benefits retroactive to the date of defendants' exclusion of plaintiff spouses from receiving AFDC money payments. *Cf. Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (federal courts could require state defendants to send members of class of AFDC claimants an "explanatory notice" advising them of existence of state administrative procedures for appealing denial of applications for benefits).

such relative is the child's parent and the child is a dependent child by reason of the physical or mental incapacity of a parent or is a dependent child under section 607 of this title) ·.... (emphasis added).

The use of the conjunctive "and" in the phrase "and the spouse of such relative" mandates that the spouse be afforded the same benefits as the caretaker relative. If the appellees' interpretation of this statute were to prevail, and if some benefit other than money payments would satisfy the state's responsibility to the spouse under the AFDC program for the unemployed and incapacitated, then nothing would prevent the state from applying this same rationale to deny money payments to the caretaker relative and perhaps even the child. Appellees' interpretation, when carried to its ultimate conclusion, could thus result in the state's piecemeal and selective elimination of eligibility in the AFDC money grant program. I am confident that such a result was never intended by Congress.

I, therefore, agree that the district court's decision must be reversed and that appellees must be enjoined from excluding spouses of unemployed and incapacitated parents from AFDC money payments.