Claire MURROW et al., Plaintiffs,

v.

Robert L. CLIFFORD, Individually and as Commissioner of the Department of Institutions and Agencies, his successors in office, agents and employees, Defendant.

Civ. A. No. 114–73.

United States District Court, D. New Jersey.

Dec. 3, 1975.

**1000**

Camden Regional Legal Services, Inc. by Michael C. Morris, and Peter J. O'Connor, Camden, N. J., for plaintiffs.

William F. Hyland, Atty. Gen. of N. J. by Joan W. Murphy, Deputy Atty. Gen., Newark, N. J., for defendant.

Before HUNTER, Circuit Judge, and COHEN and FISHER, District Judges.

## OPINION

COHEN, Senior Judge:

The narrow issue presented for our consideration, on cross motions for summary judgment, is whether New Jersey's policy of denying AFDC[1] benefits to pregnant women, irrespective of whether there are other dependent children in their care, is constitutionally infirm. As a result of the decision in *Burns v.*

---

1. "*Aid to Families with Dependent Children,*" 42 U.S.C. § 601 *et seq.*

2. The class action was certified by the late Judge Kitchen on June 12, 1973 in a letter memorandum. Defendants do not contest this ruling.

3. 42 U.S.C. § 606(a) provides in relevant part:
   "The term 'dependent child' means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father,

*Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975) discussed *infra,* plaintiffs have abandoned their claims on behalf of the unborn child itself, and limit this action to the claims of the mothers of unborn children. For the reasons discussed below, we find that the denial of AFDC benefits to pregnant women does not deprive plaintiffs of the Equal Protection of the Law.

To understand the nature of the claim presented, an elaboration of the facts and history of the case is necessary. This is a class action brought pursuant to 42 U.S.C. § 1983 in which jurisdiction was originally alleged under 28 U.S.C. § 1343.[2] Plaintiffs seek to represent the class consisting of "all women whose pregnancies have been medically determined, and their unborn children, who meet all the eligibility conditions for AFDC, including pregnant women receiving AFDC for children already born but not for their unborn child, but are denied AFDC until the actual birth of a child." (Amended Complaint, Count III). Three claims were advanced initially: first, it was argued that the state policy was a denial of equal protection to the fetus *in utero;* secondly, it was contended that the pregnant woman herself was being denied equal protection; and thirdly, plaintiffs urged that an unborn child was a "dependent child" within the meaning of 42 U.S.C. § 606(a),[3] and that the state policy was inconsistent with the federal statutory scheme. The complaint seeks injunctive and declaratory relief in addition to retroactive AFDC payments.

mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment . . . ."

The late Judge Kitchen decided all three claims adversely to plaintiffs, and an appeal was taken to the Third Circuit. That court reversed and remanded for the convening of a three-judge court.[4]

Preliminarily, we must determine what level of scrutiny should be applied to the classification in question. Plaintiffs have amended their complaint to allege that the defendants' failure to provide AFDC benefits to the represented class violates the "fundamental right to procreate." In support of this proposition, the plaintiffs cite several cases, none of which is apposite. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), for example, involved the question of whether and under what circumstances a woman could terminate a pregnancy. In *Roe*, the question was whether a woman had a right not to bear children. The relationship between *Roe* and the instant case is tenuous at best. Perhaps the leading case in the area of social welfare legislation is *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). *Dandridge* involved a Maryland "maximum grant regulation" which established an upper limit on the amount of money a family entitled to AFDC benefits could receive, regardless of the number of persons in the household. The Court held that the regulation was consistent with the federal statutory scheme, and that it did not violate the Equal Protection Clause of the Fourteenth Amendment. In *Dandridge*, it was also contended that the "fundamental right to procreate" was impaired. Justice Marshall who dissented from the majority holding in *Dandridge* had this to say about that argument:

"Appellees do argue that their 'fundamental rights' are infringed by the maximum grant regulation. They cite, for example, *Skinner v. Oklahoma, ex rel. Williamson*, 316 U.S. 535 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), for the proposition that the 'right of procreation' is fundamental. This statement is no doubt accurate as far as it goes, but the effect of the maximum grant regulation upon the right of procreation is marginal and indirect at best, totally unlike the compulsory sterilization law that was at issue in *Skinner*." 397 U.S. at 520, n. 14, 90 S.Ct. at 1180.

On the facts of this case, we can perceive no basis for finding that plaintiffs' right of procreation is impaired, other than in a remote and tenuous fashion. We, therefore, reject plaintiffs' contention that a fundamental right is involved. From this it follows that the State of New Jersey need not justify its policy by a "compelling state interest."[5]

4. In *Murrow v. Clifford*, 502 F.2d 1066, 1070 (3rd Cir. 1974) the court held:
".  .  . that it is improper for a single district court judge to decide a supremacy clause claim against the claimant when it is pendent to a constitutional claim which must be decided by a three-judge district court. If he is not going to sustain the supremacy claim he should request the convening of a three-judge court and permit that court to pass upon the entire case."
In *Doe v. Beal*, Nos. 523 F.2d 611 (3rd Cir., 1975) (en banc) the Third Circuit reconsidered *Murrow* in light of the language contained in *Hagans v. Lavine*, 415 U.S. 528, 543–45, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) and overruled that portion of Murrow which precluded a district judge from deciding a statutory claim adversely to the plaintiffs.

This ruling has no effect here since the Supreme Court decision in *Burns, supra*, has foreclosed consideration of the statutory issue presented. Thus, we are only confronted with constitutional questions, and a three judge court has been properly convened. See *Murrow v. Clifford, Id.*, (Rosenn, J., concurring and dissenting).

5. The claims asserted by the plaintiffs in the instant case do not involve the impairment of any "fundamental rights" which have been recognized by the Supreme Court, such as the right of privacy (*Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)), the right to travel (*Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)), the right to procreate (*Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)), or the

Absent the impairment of a fundamental right, both sides agree that the test to be used in determining whether plaintiffs have been denied their constitutional rights is that which was articulated · in *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). In *Moreno,* the Supreme Court examined the constitutionality of § 3(e) of the Food Stamp Act of 1964, 7 U.S.C. § 2012(e). § 3(e) created two categories of persons for purposes of receiving food stamps. One class consisted of persons who lived in the same household, and were related to each other. The other class consisted of households containing one or more members who were unrelated to each other. The latter class was denied food stamps. The Court struck down the classification finding that is was wholly without rational basis. In so doing, the Court used the following analysis:

"Under traditional equal protection analysis, a legislative classification must be sustained, if the classification is rationally related to a legitimate governmental interest." (citations omitted). 413 U.S. at 533, 93 S.Ct. at 2825.

More recently the Supreme Court has had occasion to clarify what standard was to be used in gauging the constitutionality of statutes in the area of social welfare. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), at issue was the constitutionality of the duration-of-relationship requirement of the Social Security Act, 42 U.S.C. §§ 416(c)(5) and (e)(2). The

statutes defined "widow" and "child" to exclude surviving wives and stepchildren who were related to the wage earner for less than nine months prior to his death.

A three-judge court held the duration-of-relationship requirement unconstitutional because it presumed a fact which was "neither necessarily, nor universally true." 373 F.Supp. 961, 965 (N.D.Cal.1974). The Supreme Court reversed, and in so doing, recognized the vitality of *Dandridge, supra.* The Court quoted extensively from the *Dandridge* opinion:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. . . .

"To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, in-

right to vote (*Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1973)). Nor do the claims asserted in the instant case arise by virtue of any "suspect" classification made by New Jersey, such as a classification on the basis of race (*Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967)), or alienage (*In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973)), or national origin *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948). There is no fundamental constitutional right to AFDC

payments. *Jefferson v. Hackney,* 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Krislov, "The OEO Lawyers Fail to Constitutionalize a Right to Welfare: A Study in the Uses and Limits of the Judicial Process," 58 Minn.L.Rev. 211 (Dec. 1973). Therefore, since the denial or limitation of AFDC benefits to pregnant women creates neither a suspect category nor impairs a fundamental right, the defendants need not show a compelling state interest to justify the policy questioned under the Equal Protection Clause.

volves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. . . . It is a standard that has consistently been applied to state legislation restricting the availability of employment opportunities. *Goesaert v. Cleary,* 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163; *Kotch v. Board of River Port Pilot Comm'rs,* 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093. See also *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435. And it is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy." *Id.,* 397 U.S. at 485–486, 90 S.Ct. 1153. 422 U.S. at 769–70, 95 S.Ct. at 2468–69.

Furthermore, the Court went on to say:

"... [A] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status. *Dandridge v. Williams, supra,* though of course Congress may not invidiously discriminate among such claimants on the basis of a 'bare congressional' desire to harm a politically unpopular group, *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2826, 37 L.Ed.2d 782 (1973), or on the basis of criteria which bear no rational relation to a legitimate legislative goal. *Jiminez v. Weinberger,* 417 U.S. 628, 636, 94 S.Ct. 2496, 2501, 41 L.Ed.2d 363 (1974). *United States Dept. of Agriculture v. Murry,* 413 U.S. 508, 513–514, 93 S.Ct. 2832, 2835, 37 L.Ed.2d 767 (1973)." 422 U.S. at 772, 95 S.Ct. at 2470.

From this language, we conclude that the appropriate constitutional benchmark by which the challenged classification must be measured is that which is set forth in *Dandridge, supra.*

We now turn to the history and purpose of the Social Security Act. The legislative goal of the Act is set forth in 42 U.S.C. § 601:

For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

Plaintiffs vigorously contend that the denial of benefits to pregnant women is antithetical to the purpose of the AFDC program. The denial of such benefits, it is said, will impair maternal health, and adversely affect the unborn child. Our examination of the legislative history, and recent case law, leads us to conclude, however, that maternal and prenatal health care was not a purpose of the AFDC program. In *Burns v. Alcala, supra.* the Court concluded that an "unborn child" was not a "dependent child" within the meaning of 42 U.S.C. § 606(a).[6] After discussing the history and the restricted purposes of the Act, *see* 420 U.S. 581–82, 95 S.Ct. 1180, 43 L.Ed.2d 469, the Court made clear that the needs of pregnant women and prenatal care were not within the ambit of the Act. The Court pointed out:

Congress did not ignore the needs of pregnant women or the desirability

6. See n. 3 *supra.*

of adequate prenatal care. In Title V of the Social Security Act, now codified as 42 U.S.C. §§ 701–708 (1970 ed. and Supp. III), Congress provided federal funding for prenatal and postnatal health services to mothers and infants, explicitly designed to reduce infant and maternal mortality. See S.Rep.No.628, *supra,* at 20. In selecting this form of aid for pregnant women, Congress had before it proposals to follow the lead of some European countries that provided "maternity benefits" to support expectant mothers for a specified period before and after childbirth. Hearings on S. 1130 before the Senate Committee on Finance, 74th Cong., 1st Sess., at 182, 965–971 (1935). If Congress had intended to include a similar program in the Social Security Act, it very likely would have done so explicitly rather than by relying on the term "dependent child," at best a highly ambiguous way to refer to unborn children. 420 U.S. at 583–84, 95 S.Ct. at 1185–1186. *See also Wisdom v. Norton,* 507 F.2d 750, 755 (2d Cir. 1974).

Given this rather explicit statement as to the legislative goals of the Social Security Act, we conclude that the state policy which plaintiffs challenge is not violative of the Constitution.[7] Defendants' motion for summary judgment will be granted. Plaintiffs' cross motion will be denied.

Counsel may submit an appropriate order.

---

7. We reach this conclusion notwithstanding the fact that the Supreme Court in *Burns, supra,* did not reach the constitutional questions presented here.