Sally GREEN, Individually and on behalf of her unborn child, Michelle Beckler, Individually and on behalf of her unborn child, Trina Thomas, Individually and on behalf of her child, Tonya Thomas and on behalf of all other persons similarly situated, Plaintiffs,

v.

Wayne STANTON, Individually and in his capacity as Administrator of the Indiana State Department of Public Welfare, Marion M. Hilger, Robert M. Curless, Robert Watson, Jr., Individually and in their capacity as members of the Indiana State Board of Public Welfare, John E. Heiny, Individually and in his capacity as Director of the Allen County Department of Public Welfare, and John D. Kelley, Individually and in his capacity as Director of the Lake County Department of Public Welfare, Defendants.

Civ. No. 73 F 19.

United States District Court,
N. D. Indiana,
Fort Wayne Division.

May 5, 1978.

William Rastetter, Fort Wayne, Ind., Ivan E. Bodensteiner, Valparaiso, Ind., Susan H. Schwandt, Gary, Ind., Marie A. Failinger, Indianapolis, Ind., for plaintiffs.

Philip H. Larmore, Fort Wayne, Ind., Gary L. Thompson, Carol Ann Bowman, Elizabeth Hamacher, Marilyn R. Ratliff, Indianapolis, Ind., John P. Segovia, Gary, Ind., for defendants.

## MEMORANDUM OF DECISION AND JUDGMENT ORDER

ESCHBACH, Chief Judge.

This action is before the court on the parties' second cross-motions for summary judgment, filed pursuant to Rule 56, Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion for summary judgment will be granted, and judgment will be entered accordingly.

This action, as many of its genre, has experienced a long line of litigation in this and the appellate courts. A brief summary of that history will assist in placing the instant decision in context.

Plaintiffs commenced this action February 7, 1973, challenging the defendants' policy of denying benefits under the Aid to Families with Dependent Children (AFDC) program to women who had been medically determined to be pregnant and who were otherwise qualified to receive such benefits but who had no born dependent children in the household. The challenge was originally based upon both statutory and constitutional grounds. It was brought pursuant to 42 U.S.C. § 1983 with jurisdiction based upon 28 U.S.C. § 1343. By a judgment order entered July 2, 1973, this court granted plaintiffs, and the class members, declaratory and injunctive relief. *Green v. Stanton,* 364 F.Supp. 123 (N.D.Ind.1973). The class was then composed of "all women in the State of Indiana whose pregnancies had been medically determined, and their unborn children, who are otherwise eligible to receive AFDC but are denied benefits until the actual birth of the child." 364 F.Supp. at 124. The basis for the relief granted in the July 2, 1973, judgment order was that the defendants' policy conflicted with provisions of the Social Security Act and were, therefore, invalid under the supremacy clause. The United States Court of Appeals for the Seventh Circuit affirmed the judgment on the merits, *Green v. Stanton,* 499 F.2d 155 (7th Cir. 1974), but the United States Supreme Court vacated the judgment and remanded the case for consideration in light of *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975). *Stanton v. Green,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

On October 2, 1975, this court vacated the judgment order entered July 2, 1973, and directed the parties to file supporting briefs addressing the claims not precluded by *Burns v. Alcala, supra.* On January 5, 1976, plaintiffs filed their first motion for summary judgment, and on January 30, 1976, defendants filed their first cross-motion for summary judgment. On July 19, 1976, the court denied the cross-motions for summary judgment.

In denying the first cross-motions for summary judgment, the court recognized, as had the parties, that the only issue left open in this action, after *Burns v. Alcala, supra,* is whether it is a violation of the equal protection clause of the fourteenth amendment for a state to deny benefits under the AFDC program to women whose pregnancies have been medically determined and who are otherwise eligible to receive AFDC benefits but who do not have a born dependent child in the household. As the court indicated, however, this single issue presents two distinct constitutional questions: first, whether it is constitutionally compelled that a categorical welfare program for the benefit of born children must, to be consistent with the equal protection clause, also extend to the benefit of unborn children; and second, whether in the context of the state's welfare system as a whole, it is a violation of the equal protection clause for the state to provide assistance for the benefit of born children without providing comparable assistance for the benefit of unborn children, assuming plaintiffs can demonstrate that equal assistance is not provided to these two groups by the state's welfare system as a whole.

In their first post-*Burns* cross-motions for summary judgment, both parties directed

their arguments solely to the second question, *i. e.,* whether the state's welfare system as a whole violates the equal protection clause by failing to provide assistance for the benefit of unborn children comparable to that provided for the benefit of born children under the AFDC program. In proceeding on this argument, however, plaintiffs never alleged or offered any proof that they were unable to receive equal assistance from any alternative programs which might exist. In fact, it was, and is, quite apparent that under the whole of Indiana's welfare system there are other programs through which plaintiffs, and their class, might receive assistance which would provide some benefits for their unborn children. Thus, as the court indicated in denying the first cross-motions for summary judgment, plaintiffs must first demonstrate their standing to attack Indiana's welfare system as a whole, *i. e.,* they must show that they suffered a legally cognizable injury by the operation of the welfare system they challenge, and secondly, the parties must support their arguments concerning the state's welfare system as a whole with proof of the operation of that system as a whole as it relates to plaintiffs and their class. Thus, in denying the first cross-motions for summary judgment, the court recognized three things: first, plaintiffs were attacking the state's welfare system as a whole; second, plaintiffs had failed to demonstrate their standing to attack the state's welfare system as a whole where the record showed only that they had been denied benefits under one categorical program, *i. e.,* the AFDC program; and third, there had been a failure of proof by both parties as to the nature of the state's welfare system as a whole as it related to the plaintiffs and the class they represent. Of course, nothing in the July 19, 1976, order precluded the parties from remedying these shortcomings; in fact they were directed to do so. Neither was there anything in that order precluding plaintiffs from also presenting arguments based on the first question noted *supra, i. e.,* whether the equal protection clause requires that a categorical welfare program which provides assistance for the benefit of born children also provide comparable assistance for the benefit of unborn children.

In the second post-*Burns* cross-motions for summary judgment, which are now before the court, the parties have addressed the problems outlined above, and the court finds that based upon the record as it now stands, there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law. Before turning to a review of the merits of the parties' arguments, there are certain threshold questions which must be determined: first, the standing of the named plaintiffs; and second, the proper class definition for purposes of the constitutional attack.

## STANDING

As noted previously, plaintiffs elected in their first post-*Burns* motion for summary judgment to attack the state's policy here at issue by attacking the state's welfare system as a whole. By choosing this approach it became imperative that plaintiffs demonstrate their standing. Only upon such a showing could they proceed. Plaintiffs could, of course, have avoided such a showing by simply attacking the categorical AFDC program where it is clear they suffered the requisite personal injury to give them standing. They have not chosen to follow that approach, relying instead on their original attack against the state's entire welfare system as it applies to them and the class they represent.

By the materials presented in the second motion for summary judgment, only plaintiff Green has made the requisite showing. Therefore, the claims of the other plaintiffs will no longer be considered except as they might fall within the class set forth, *infra.*

## CLASS DEFINITION

■ The court finds the appropriate class for purposes of the constitutional question to be: All women in the State of Indiana who have been medically determined to be pregnant and who meet all requirements for AFDC benefits but who do not have born dependent children in their household.

This class is somewhat narrower than that used in considering the statutory question in that the unborn children are no longer included. This deletion is mandated by the fact that unborn children are not considered persons for purposes of the fourteenth amendment. *Roe v. Wade,* 410 U.S. 113, 158, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The class has also been narrowed to include only those otherwise qualified women who have no born dependent children in their household. The parties apparently agree on the appropriateness of this "all or nothing" class of women without born dependent children, and the court also finds the class to be the most appropriate for the constitutional challenge.

## CONSTITUTIONAL CLAIMS

Plaintiff contends that it is a violation of the fourteenth amendment equal protection clause for defendants to provide assistance to mothers for the benefit of their born children without providing comparable assistance to "prospective" mothers for the benefit of their unborn children. Plaintiff further contends that the effect of this state policy on the fundamental right of privacy requires the court to employ a "strict scrutiny" test in analyzing the constitutional claim. Alternatively, plaintiff contends that the state's policy is invalid even when analyzed under the lesser "rational basis" test. Defendants, on the other hand, argue that only a "rational basis" analysis is required and that under such a test they have demonstrated sufficient governmental interests to warrant the different treatment involved. The defendants do not deny that different levels of assistance are provided for the benefit of born children, as opposed to unborn children. Defendants argue, instead, that the born and unborn children have different needs and that the different treatment is fully justified by both the different needs of the two groups and other legitimate governmental concerns. These latter governmental concerns involve matters primarily of administrative convenience in the operation of the state's welfare system. For example, defendants argue that the needs of born chil-

dren are more readily definable than those of unborn children. They also argue that the distinction avoids possible fraud which could occur if a needy pregnant woman received the assistance for the benefit of the unborn child but later terminated the pregnancy by abortion. The state argues that this possibility of fraud is real and that it would have no effective means of recourse if the fraud were allowed to occur. Given these contentions the court now turns to a consideration of the equal protection claim.

■ Plaintiffs contend that the equal protection analysis must be governed by the strict scrutiny test because the fundamental right of familial privacy has been infringed. Plaintiffs base this contention upon the argument that denying AFDC benefits to "prospective" mothers will discourage them from bearing children or will deny them the opportunity to bear healthy children. This argument has been pressed in other cases of this genre without success. *Taylor v. Hill,* 420 F.Supp. 1020 (W.D.N.C.1976) (three judge court), *aff'd without opinion,* 430 U.S. 961, 97 S.Ct. 1639, 52 L.Ed.2d 352 (1977); *Murrow v. Clifford,* 404 F.Supp. 999 (D.N.J. 1975) (three judge court). This court agrees with the excellent analysis set forth in *Murrow v. Clifford, supra,* which found, at best, only a "remote and tenuous" effect of such policies on any protected rights. Therefore, the defendants need only justify their policy by demonstrating that it is rationally related to a legitimate governmental interest. In considering whether the requisite showing has been made, this court has been guided by the United States Supreme Court's language in *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in

some inequality." [citation omitted] "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." [citation omitted] "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [citation omitted].

In support of the distinction made by the policy now at issue, the record supports defendants' contentions that a rational basis exists to justify the differing treatment afforded in these circumstances. The defendants have supported their policy decision primarily on administrative convenience grounds. For example, they have demonstrated the difficulty involved in trying to ascertain the needs of an unborn child. Because the child's needs can scarcely be determined separate from the needs of the prospective mother, the task becomes administratively impossible. The defendants have also demonstrated the administrative difficulties which would result from attempting to work plaintiff's proposals into the overall welfare system in light of the many alternative programs which now provide some assistance to needy pregnant women who have no born children. Finally, the defendants have demonstrated the possible fraud which could be practiced by women who could receive assistance for the benefit of the unborn child only to terminate the pregnancy by abortion after receiving the assistance. The court finds these concerns, and the defendants' chosen methods of avoiding them, to be sufficiently related to valid governmental interests to withstand the present constitutional attack. *See Wisdom v. Norton,* 507 F.2d 750 (2nd Cir. 1974); *Taylor v. Hill,* 420 F.Supp. 1020 (W.D.N.C.1976) (three judge court), *aff'd without opinion,* 430 U.S. 961, 97 S.Ct. 1639, 52 L.Ed.2d 352 (1977); *Murrow v. Clifford,* 404 F.Supp. 999 (D.N.J.1975) (three judge court).

### JUDGMENT

Accordingly, it is ordered, adjudged, and decreed that defendants' motion for summary judgment be, and it hereby is, granted. It is further ordered, adjudged and decreed that judgment be, and it hereby is, entered for defendants and against plaintiffs. Plaintiffs to take nothing by way of this action.