**Frank ANNESS, Plaintiff-Appellant,**

**v.**

**UNITED STEELWORKERS OF AMERICA, Defendant-Appellee.**

**No. 81–3618.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1983.

Decided May 26, 1983.

**918**

Eugene Green (argued), Green, Schiavoni, Murphy, Haines & Sgambati, L.P.A., Youngstown, Ohio, for plaintiff-appellant.

Carl B. Frankel, Pittsburgh, Pa. (argued), Daniel P. Thomas, Delbene, La Polla & Thomas, Warren, Ohio, David M. Silberman, Bredhoff, Gottesman, Cohen, Chanin, Weinberg & Petramalo, Washington, D.C., for defendant-appellee.

Susan B. Reilly, E.E.O.C., Washington, D.C., for amicus curiae.

Before MERRITT and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Appellant Frank Anness was employed by the appellee United Steelworkers of America as a staff representative for over eight years before his termination effective July 31, 1979. Although he worked for a union, he was represented during his employment by another union known as the Staffman's Organizing Committee (SOC), under a written collective bargaining agreement which provided for mandatory retirement at age sixty-five. He was terminated in accordance with this agreement despite

his objections, one of which concerned the correct date of his birth,[1] the other the question as to whether he could lawfully be terminated because of the Age Discrimination in Employment Act (ADEA) as amended in 1978, 29 U.S.C. § 621 *et seq.*[2]

The effective date of the amendment, which raised the retirement date from age sixty-five to age seventy, was set out under section 2(b), Pub. Law 95–256:

"The amendment ... shall take effect on the date of enactment of this Act [April 6, 1978] except that, in the case of employees covered by a collective bargaining agreement which is in effect on September 1, 1977 ... the amendment ... shall take effect upon the termination of such agreement or on January 1, 1980, whichever occurs first."

On September 1, 1977, Anness was working under terms of an agreement between SOC and the Steelworkers dated August 1, 1974, which contained the following termination clause:

"This Agreement shall be effective as of August 1, 1974 and will continue in effect until such time as the United Steelworkers of America has completed negotiations and reached new agreements with the aluminum industry nonferrous and basic steel industry, in 1977. No later than 30 days thereafter, the parties will make arrangements to meet and negotiate a new Agreement. This Agreement shall continue in effect until either party notifies the other of its desire to terminate, or a new Agreement is reached by the parties. It is further understood that the effective date of any agreement reached by the parties subsequent to July 31, 1977 shall be effective August 1, 1977, unless otherwise mutually agreed."

---

1. Anness no longer disputes that his birthday was July 14, 1914, as determined by the Court of Common Pleas of Allegheny County, Pennsylvania.

2. Section 623(f)(2) of the Act was amended April 6, 1978 as follows:

   "(f) It shall not be unlawful for an employer, employment agency, or labor organization—

   \* \* \* \* \* \*

   "(2) to observe the terms of a bona fide seniority system or any bona fide employee

benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) [individuals less than age 70] of this title because of the age of such individual."

It was not until November 1, 1977, that SOC negotiated a superseding agreement with the Steelworkers, but this agreement contained language that it was "dated as of August 1, 1977", and it was to "be effective August 1, 1977." [3]

The ADEA amendment came into being April 6, 1978, at which time authority for issuing regulations was vested in the Wage & Hour and Public Contracts Division of the Department of Labor. In view of the doubt cast by the 1978 amendment upon its compulsory retirement policy of age sixty-five, the Steelworkers Union in July of 1978 sought an informal opinion from the Department of Labor to determine its validity. A meeting ensued between Steelworkers representatives, Donald Elisburg, Assistant Secretary for Employment Standards of the Department of Labor, and other personnel from the Employment Standards Division. The Steelworkers representatives explained that benefits conferred under the new contract with SOC were given retroactive effect to August 1, and that the mandatory retirement age of sixty-five continued in effect. Informally and orally, Assistant Secretary Elisburg advised that he would consider the 1977 collective bargaining agreement to have been in effect as of September 1, 1977 so long as the purpose of the provision that this agreement would be effective a month earlier was not a subterfuge to avoid the 1978 ADEA amendment. The Steelworkers advised the Department of Labor Officials at the meeting that the retroactive provision was customary in their dealings with SOC.

Appellee advised Anness on May 15, 1979 that he would be retired no later than August 1, 1979 because he had reached the mandatory sixty-five year retirement age.

Appellant exhausted the administrative remedies available to no avail. He retired involuntarily on July 31, 1979, and then filed a charge based on age discrimination on August 14, 1979, with the Cleveland Office of the Equal Employment Opportunity Commission (EEOC), after having personally written the Steelworkers Union President that he considered himself "discharged without just cause," and indicating that he would take "proper action" if appellee took the position he was "mandatorily retired."

The EEOC had by this time assumed Age Discrimination jurisdiction from the Department of Labor under a 1978 reorganization plan. *See* 43 Fed.Reg. 19807 (May, 1978). It had issued a proposed rule applicable to the situation presented in this case, later published in 44 Fed.Reg. 232 (p. 68858, 11-30-1979).[4] Later, after investigation and receipt of a letter dated October 20, 1980, from Elisburg setting out his recollection of the July, 1978, meeting and his impression that "the retroactivity was not a bad faith effort by the Steelworkers to get around the new age 70 mandatory retirement age," EEOC decided not to file suit itself.[5] A replacement charge, dated December 19, 1979 was filed by appellant, since apparently EEOC considered the earlier August one to have been put on the wrong form. In the earlier charge, Anness contended that the Steelworkers mandatory retirement policy had been wrongly applied to him but raised the question of his age in respect to the involuntary termination.

The district court concluded that while Anness had not satisfied the statutory prerequisites of Section 626, (filing his action within 180 days after the alleged unlawful practice occurred), it would not treat the

3. SOC had served notice on the Steelworkers of its intent to terminate the 1974 agreement in May of 1977, but negotiations on a new contract continued, nonetheless, beyond the July 31, 1977 expiration date while the Steelworkers were negotiating new bargaining agreements with the nonferrous steel industry.

4. The proposed rule indicated clearly that where a collective bargaining agreement expired before 9-1-77 and a new agreement

signed subsequently was to be effective retroactively to the expiration date of the previous agreement, the exemption of Section 4(f)(2) of the ADEA did not apply.

5. This decision, however, apparently represented a recession of an earlier determination of the General Counsel to authorize suit by EEOC on the basis of the proposed rule referred to in Footnote 4.

perceived failure as jurisdictional and that the 180 day charge period would be considered as "equitably tolled." Considering the merits of appellant's claim, the trial court considered the statutory language to be ambiguous, and thus resorted to legislative history "the effectuate congressional intent." The trial court concluded that since the collective bargaining agreement applicable to Anness was "negotiated in good faith," and that the sixty-five year retirement age was a part of "reciprocal agreements and concessions made" that its language was entitled to "maximum deference." Thus, although not executed prior to September 1, 1977, it was "in effect" on that date, indeed was effective as of August 1, 1977. The court also held that the Elisburg letter of October 20, 1980, should be given "great deference" as a statutory interpretation, although concededly it did not meet the "facial requirements" of 29 U.S.C. § 259, incorporated into the ADEA through 29 U.S.C. § 626(e), which sets out that an employer may not be held liable if he proves he acted in good faith reliance upon a written administrative ruling of the responsible agency enforcing the ADEA. The trial court also concluded that the 1977 bargaining agreement with its critical retroactive provision was "bona fide," and not a subterfuge to avoid the 1978 ADEA amendment.

Appellant Anness now appeals from the summary judgment awarded appellee Union as employer.

■ We conclude, first of all, contrary to the determination made by the trial court, that appellant's charge of age discrimination was timely. Anness filed a charge setting out the gravamen of his complaint in August of 1979 well within the statutory period after the alleged unlawful practice occurred, even if it were considered to be May 15, 1979, the day that appellee notified Anness of his future impending mandatory retirement date. See Chardon v. Fernandez, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). Anness did all that a reasonable aggrieved claimant should be called upon to do under the statutory scheme of the ADEA; he went to the local office of the EEOC and filed his charge; he recited his complaint that he was wrongfully deprived of his job because of his age. The supplemental charge, dated December 19, 1979, under these circumstances is treated as relating back to the earlier August charge, even if filed on the wrong form.

■ The crucial issue in this case, however, is whether the bargaining agreement between appellant's union and appellee employer was "in effect" on September 1, 1977 so as to come within the meaning of the exemption of section 2(b) of the 1978 amendment. The agreement at issue was executed two months after September 1, 1977, but was made retroactive to one month before that critical date referred to in the 1978 amendment. To interpret the Act, we start with its language. *Lewis v. United States,* 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980); *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). We give that statutory language its ordinary meaning absent persuasive reasons to the contrary. *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *Burns v. Alcala,* 420 U.S. 575, 580, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975); *Chandler v. Roudebush,* 425 U.S. 840, 848, 96 S.Ct. 1949, 1953, 48 L.Ed.2d 416 (1976). The ordinary meaning of the language of Section 2(b), "in effect on September 1, 1977," would seem to preclude an agreement executed two months later and not in being on September 1, 1977. To construe the law in this fashion would not seem to produce an unreasonable, unforeseen result at variance with the statutory policy. Nor does an examination of the legislative history indicate a different result, particularly in view of the admonition that acts seeking to rectify discrimination are to be interpreted broadly for the benefit of those intended under their remedial purposes. *See County of Washington v. Gunther,* 452 U.S. 161, 178, 101 S.Ct. 2242, 2252, 68 L.Ed.2d 751 (1981); *Wrenn v. American Cast Iron Pipe Co.,* 575 F.2d 544, 547 (5th Cir.1978).

In this respect, the Senate Report on the amendment is instructive:

The reason for the extended effective date for collectively bargained employee benefit plans is to recognize, and to provide the maximum deference to contracts *negotiated* between management and labor, consistent with the committee's desire to end mandatory retirement of those workers under age 70. The committee recognizes that these contracts *were negotiated* in good faith and that reciprocal agreements and concessions were made in exchange for the mandatory retirement provision. . . . This postponed effective date would only apply to pension plans which were negotiated as part of a collective bargaining agreement . . . . (emphasis added)

S.Rep. # 95–493, 95th Cong. 1st Sess. 1 (1977), reprinted U.S.Code Cong. & Ad. News 504, 514 (1978).

■ The reference in the Senate Committee report is made to contracts negotiated, and the fair inference as to intent would be that the exemption would apply as to those collective bargaining agreements already negotiated and/or effectuated before September 1, 1977. Furthermore, the interpretation given to the statute by the EEOC, even if in the form of a proposed ruling (see footnote 4), is entitled at the very least to consideration and weight by the courts. *Brennan v. Owensboro-Daviess Hosp.,* 523 F.2d 1013, 1028 (6th Cir.1975); *AFSCME v. City of Cleveland,* 484 F.2d 339, 344 (6th Cir.1973). In *Brennan,* this court stated that an "interpretive bulletin" issued by the Secretary of Labor, charged with enforcement of the Equal Pay Act, while not controlling, was "entitled to great weight" in the interpretation of one of the provisions of that Act. 523 F.2d 1028. The district court's rejection of the EEOC's interpretation set out in the proposed ruling was therefore inappropriate.

On the other hand, this court does not give equivalent weight to the informal oral pronouncement of Assistant Secretary Elisburg given without any opportunity for appellant's representative to be heard, and rendered without full and deliberate consideration and also without the opportunity for adverse comments, arguments or submissions. Elisburg's letter of recall about what took place at the informal meeting with Steelworker officials was issued more than five months after this suit was instituted, and may have some bearing only on the bona fides of the Union employer, but it does not serve as a guide as to the correct interpretation of the 1978 amendment in our view. The trial court was in error, then, in giving this Elisburg communication "great deference" in its decision.

■ We conclude, therefore, that the Anness charge was timely filed, and that the proper interpretation of the 1978 amendment to ADEA under consideration in this cause is that the 1977 collective bargaining agreement between appellee and appellant's union, SOC, executed after negotiation on November 1, did not suspend the effective date of the law from April 6, 1978, until January 1, 1980, as contended by appellee.

It is necessary, in light of these conclusions, to consider appellee's further contention that it is nevertheless immune from liability under Section 7(e) of ADEA, 29 U.S.C. § 626(e) which incorporates 29 U.S.C. § 259, part of the 1947 Portal-to-Portal Act. The pertinent part of § 259 relied upon by appellee reads:

"In any . . . proceeding based on any act or omission . . . no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay . . . compensation . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any *written* administrative regulation, order, ruling, approval, or interpretation of the agency of the United States . . . ." (emphasis added)

■ The plain language of this section indicates that it is applicable only if the approval or interpretation of the law by the appropriate agency in *writing.*

"The language of the statute connotes, and the legislative history of the Act shows, that Congress intended to exonerate only those who relied upon formal rulings."

*Murphy v. Miller Brewing Co.,* 307 F.Supp. 829, 838 (E.D.Wis., 1969) affirmed 457 F.2d 221, 228 (7th Cir.1972). The case relied

upon by appellee, *Marshall v. Baptist Hospital,* 668 F.2d 234 (6th Cir.1981) is inapposite. *Marshall* was concerned with a formal, written interpretive ruling of the agency involved which was carefully and plausibly considered by the hospital's personnel director who acted in good faith reliance upon its language. In this case, the Steelworkers relied only upon an oral declaration by an agency official; there was no formal ruling or approval issue, and there was no *written* regulation, order, ruling, approval or interpretation upon which the union could act in reliance prior to the filing of the Anness charge, nor even prior to the filing of this litigation. Obviously, there was no basis for the application of 29 U.S.C. § 259 at the time appellee decided to retire Anness involuntarily contrary to the provisions of the 1978 ADEA amendment as this court has now interpreted it. Appellee cannot claim immunity from liability under this statutory provision.

Accordingly, the judgment of the district court is reversed and this case is remanded for further proceedings consistent with this opinion.