959 F.2d 1361
 139 L.R.R.M. (BNA) 2869, 60 USLW 2668,
121 Lab.Cas. P 10,132
 Leonard F. BARKER, Jr., Kenneth D. Beaver, Carl J. Cannon,
Dyke M. Christian, Jeffrey L. Darwish, Robert J. Faunce,
Isaac M. Glover, Steven L. Higginbotham, James E. Kellie,
Elbert Reed, William J. Charles, and Timothy L. Reedy,
Plaintiffs-Appellants,
v.
CHESAPEAKE & OHIO RAILROAD, a/k/a CSX Transportation, Inc.,
and United Transportation Union, Defendants-Appellees.
 Nos. 91-1260, 91-1279.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 24, 1992.
Decided March 27, 1992.
Rehearing En Banc Denied
June 9, 1992.
 
 Ronald Reosti, (briefed), Barbara M. Harvey (argued and briefed), Detroit, Mich., for plaintiffs-appellants.
 Gene S. Davis, Mary C. O'Donnell (argued and briefed), Driggers, Schultz, Herbst & Paterson, Troy, Mich., C. Thomas Wilson (argued and briefed), Nelson, Wilson & Wilson, Detroit, Mich., for defendants-appellees.
 Before: GUY, NORRIS, and BATCHELDER, Circuit Judges.
 BATCHELDER, Circuit Judge.
 
 
 1
 This case on appeal presents claims of numerous plaintiffs that CSX Transportation violated provisions of section 704 of the Regional Rail Reorganization Act, resulting in damage to plaintiffs, and that their union breached its duty of fair representation in failing to assist plaintiffs in pursuing those claims. The district court dismissed plaintiffs' claims for breach of duty of fair representation and breach of contract against the United Transportation Union ("Union") as barred by the statute of limitations. We hold that plaintiffs failed to state a claim against the Union, and therefore will affirm the district court's dismissal of plaintiffs' claims against it. The district court also dismissed plaintiffs' claims against CSX Transportation (the "Railroad" or "CSX") for lack of subject matter jurisdiction over plaintiffs' claims or, alternatively, because plaintiffs lacked standing to bring their claims. For the reasons which follow, we will reverse the district court's dismissal of plaintiffs' claims against the Railroad and remand for further proceedings.
 
 I. Background
 
 2
 Each of the plaintiffs is a former CSX employee who was furloughed by CSX between 1979 and 1980. Plaintiffs claim that during the years 1979 to 1984 CSX had vacancies available in positions for which they were qualified, but that CSX failed to report those vacancies to the Railroad Retirement Board ("RRB") in violation of Section 704 of the Regional Rail Reorganization Act, 45 U.S.C. § 797c. Plaintiffs claim that this failure to report vacancies caused them to lose opportunities to secure the available positions and thus lose wages and seniority rights.
 
 
 3
 Plaintiffs filed their initial complaint in this case on January 15, 1987. That pleading did not contain a claim that CSX had violated Section 797c. On August 13, 1987, Section 797c expired by operation of its sunsetting provision, subsection (f). Plaintiffs amended their complaint on November 30, 1987, to include a Section 797c claim against CSX and an unfair representation claim against the Union for its failure to assist the plaintiffs in prosecuting their 797c claims. On January 19, 1989, both the Union and CSX filed motions to dismiss or for summary judgment.
 
 
 4
 In response to the defendants' motions to dismiss or for summary judgment, plaintiffs proffered evidence that CSX failed to report numerous vacancies.[1] This evidence included plaintiffs' affidavits stating that they reported these failures to the RRB orally and in writing, but were told that the RRB did not have the power to help them, and copies of letters that they sent to the RRB both before and after the expiration of Section 797c.
 
 
 5
 Plaintiffs' evidence also shows that in February, 1982, Plaintiff Faunce sent a letter to the RRB requesting to know its enforcement authority in the area of furloughed workers. In response, the RRB stated that it did not have the jurisdiction to investigate railroads' hiring policies. Nevertheless, Faunce continued his efforts to have the RRB investigate his charges. The RRB eventually did perform an investigation, and on August 11, 1987, the RRB issued a letter to CSX, with a copy to Faunce, stating that CSX "may have violated Mr. Robert J. Faunce's rights under section 704 of the Regional Rail Reorganization Act [Section 797c]," because of the apparent failure to report vacancies in the areas of Russell, Kentucky, and Huntington, West Virginia, during 1981. Two days later the statute expired, and the RRB took the position that it had no power to investigate any of the other plaintiffs' claims any further.
 
 
 6
 Plaintiffs also assert that they went to their representatives in the United Transportation Union ("Union") but were never given assistance by the Union. This, plaintiffs claim, was a violation of the Union's duty of fair representation.
 
 
 7
 On October 22, 1990, the district court held a hearing at which he indicated he would grant both defendants' motions. In addition to providing reasons for granting the motion, the court also questioned the validity of a release that CSX had negotiated with plaintiff Robert Faunce. The judge directed CSX to submit a formal report on how the release was negotiated, and he indicated that he was not finished with the matter. However, it does not appear from the record that the district court made any further ruling on the validity of the release.
 
 
 8
 On October 30, 1990, the district court entered an Order granting the motions to dismiss and entered judgment for the defendants. In a February 14, 1991 Order, the district court granted plaintiffs' motion to alter or amend the judgment in order to clarify a portion of the October 30 Order. On February 20, 1991, the plaintiffs filed a notice of appeal, and on February 22, 1991, they filed an amended notice of appeal.
 
 
 9
 In granting the defendants' motions to dismiss, the district court did not rely on the evidence presented by the parties in support of their positions. Instead, the court made the determination that, as a matter of law, plaintiffs had failed to state a claim. We review these legal determinations de novo.
 
 II. Discussion
 
 10
 Appellee CSX raises the threshold issue that this Court does not have jurisdiction over plaintiffs' claims against CSX because plaintiffs' notice of appeal is defective. Specifically, CSX argues that the notice only refers to the district court's amended Order of February 14, 1991, which pertains only to the Union, and does not indicate that plaintiffs are appealing from the October 30, 1990 Order dismissing their claims against CSX. We reject this argument. First, the amended Order has no existence independent of the original Order dismissing all of the claims. It refers specifically to the Order of October 30, 1990, and merely incorporates an amendment into that earlier Order. Second, the notice of appeal provided adequate notice to CSX that plaintiffs were appealing the dismissal of their claims against CSX, since it specifically designated CSX as a defendant.[2] In addition, it was the plaintiffs themselves who requested the amendment to the October 30, 1990 Order. It is illogical to assume that they would appeal only the Order which incorporated a change that they had requested. Therefore, this Court has jurisdiction to address plaintiffs' claims against CSX as well as those against the Union.
 
 
 11
 Four substantive issues are presented for our review in this matter. The first is whether the plaintiffs have stated any claim against the defendant Union. The second is whether the district court had subject matter jurisdiction to entertain the plaintiffs' Section 797c claims against CSX. The third is whether plaintiffs have standing to bring claims under Section 797c. The fourth and final issue is who should address plaintiffs' claims upon remand.
 
 A. The Union
 
 12
 Plaintiffs assert that the Union breached its duty of fair representation by failing to advise them and refusing to assist them in perfecting their respective Section 797c claims against CSX.[3] The district court dismissed plaintiffs' claims against the Union as barred by the statute of limitations. The plaintiffs argue that the district court erred in concluding that their fair representation claims were barred by the statute of limitations, and that they otherwise have stated claims against the Union. The fact-dependent question of the statute of limitations is irrelevant, since we conclude that even if the plaintiffs had brought their claims in a timely manner, they still failed to state a claim against the Union.
 
 
 13
 Plaintiffs correctly cite authority demonstrating that the duty of fair representation applies outside the context of claims for breach of a collective bargaining agreement. (See Brief of Appellant, at 32-33; Reply Brief, at 11). These cases do not persuade us, however, that the Union here had a duty to represent these plaintiffs in pursuing claims that their rights under Section 797c were violated. In one of the cases cited by plaintiffs, Breininger v. Sheet Metal Workers' Int'l Ass'n, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), the Supreme Court stated that the key to a duty of fair representation claim
 
 
 14
 is that the union is administering a provision of the contract, something we have always held is subject to the duty of fair representation. "The undoubted broad authority of the union as the exclusive bargaining agent in the negotiation and administration of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation."
 
 
 15
 110 S.Ct. at 437 (emphasis in original; citation omitted). In the present case, the statutory reporting requirements were not related to the negotiation or administration of the collective bargaining agreement, so the Union cannot be charged with a duty to represent its members on claims involving those statutory provisions.[4]
 
 
 16
 Plaintiffs contend that the Union should be required "to have sufficient knowledge of statutory provisions granting employees within the bargaining unit" both substantive and procedural rights, and that the Union "abdicated its responsibilities as the appellants' bargaining representative by failing to police CSX's compliance with the Act and by failing to enforce appellants' statutory rights or even to advise them about their rights under the Act." (Brief of Appellant, at 32-33). The legal proposition urged upon us by plaintiffs is a novel one, for which they cite no supporting authority. This proposition, if sanctioned by the courts, would require unions to become familiar with various and sundry statutes that affect their members' rights, regardless of whether they were related to negotiation and administration of the collective bargaining agreement. It would further require unions both to inform their members about those rights and to advocate on behalf of those members to secure those rights, or risk a suit for breach of their duty of fair representation. Finding no support for this concept in the pronouncements of the Supreme Court, we refuse to extend the Union's duty in such a fashion.
 
 
 17
 Furthermore, we conclude that it would not further national labor policy to compel unions to meet a requirement so vague as having knowledge of any substantive laws which might affect its members. This case clearly demonstrates why this is so. Under plaintiffs' theory, the Union was responsible for interpreting the Act in order to determine that it did provide substantive rights to Union members, and then for informing the particular Union members that their rights may have been violated. Yet, the rights that the union members here assert were based on an admittedly confusing set of statutory provisions which were unrelated to the collective bargaining agreement, which had been interpreted by the RRB for several years as being inapplicable to these union members, and with which the Union had neither any familiarity nor reason to become familiar. Plaintiffs' theory would elevate the union from a bargaining unit representative to a multi-purpose legal advocate, and we decline to sanction it.
 
 
 18
 The district court's dismissal of the plaintiffs' claims against the Union is AFFIRMED.
 
 B. Railroad
 
 19
 In their amended complaint, the plaintiffs assert that under section 704 of the Regional Rail Reorganization Act (the "Act"), 45 U.S.C. § 797c, CSX was required to provide to the Railroad Retirement Board (1) a list of former employees who are currently on furlough, and (2) a notice of vacancies for which the railroad expects to accept applications from persons other than its current employees. The plaintiffs claim that as a result of CSX's failure to post its vacancies they lost opportunities to fill those vacancies, and suffered losses of income and seniority rights.
 
 
 20
 In dismissing the plaintiffs' claims against CSX, the district court first stated that "the statute under which they claim relates only to displaced railroad employees, and in these [sic] the plaintiffs were not displaced. They were furloughed or laid off." The court interpreted the statute as applying only to displaced employees of Conrail or other specific railroads, but not CSX. Second, the district court stated that since the statute called for arbitration of disputes involving the plaintiffs' rights and no arbitration had occurred, it had no jurisdiction to hear plaintiffs' claims. We reverse the district court's determinations on both of these issues. While ordinarily we would address first the issue of subject matter jurisdiction, due to the peculiarities of this case we find it more logical instead to address first the issue of whether these plaintiffs could and did state any claim under Section 797c.
 
 
 21
 1. Plaintiffs Have Stated a Claim Under 45 U.S.C. § 797c[5]
 
 
 22
 In interpreting a statutory provision, we first examine the statute's language. Anness v. United Steelworkers of America, 707 F.2d 917, 920 (6th Cir.1983). If this language is clear and unambiguous, we can proceed no further in our examination except in very limited situations.[6] Demarest v. Manspeaker, --- U.S. ----, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991).
 
 
 23
 We first conclude that 45 U.S.C. § 797c is unambiguous in setting forth the vacancy-reporting requirement that is the focus of this dispute. Subsection (c) of Section 797c provides that "Each railroad shall timely file with the Board a notice of vacancy with respect to any position for which the railroad intends to accept applications from persons other than current employees of that carrier." (emphasis supplied). The language of this paragraph is not limited to any particular railroad; instead, "each railroad" is required to file notices of vacancies. This broad requirement furthers one of the statute's explicit purposes, set forth in Section 797c(d), that of promoting placement of former railroad employees in open positions. Subsection (d) provides,
 
 
 24
 The Board shall, through distribution of copies of the central register (or portions thereof) to railroads and representatives of classes or crafts of employees and through publication of employment information derived from vacancy notices filed with the Board, promote the placement of former railroad employees possessing requisite skills and experience in appropriate positions with other railroads.
 
 
 25
 Thus, by the clear language of the statute, the reporting requirement applies to all railroads.
 
 
 26
 CSX argues that since the Regional Rail Reorganization Act pertains to Conrail, it is logical that the term "employee," as used in Section 797c, applies only to Conrail employees. CSX contends that since Section 797c applies only to Conrail employees, plaintiffs, who are not members of the class the statute seeks to protect, do not have standing to state a claim under that section. We disagree. Section 797c(g) establishes the right of employees to bring actions to enforce their rights under the section. It permits "[a]ny employee" to petition the RRB, and provides for the enforcement of the "employee's rights." The language of Section 797c also indicates that it applies to employees who have been separated from their employment with any railroad. Subsection (a) directs the RRB to establish a register containing the names of and information about "persons separated from railroad employment after at least one year of completed service with a railroad " who are available for railroad employment. 45 U.S.C. § 797c(a)(1) (emphasis supplied). The statute refers to persons separated from "a railroad" without further limitation; yet, other portions of Section 797c specifically apply to other subsets of employees. First, in subsection (a)(3) the statute requires the Board to place at the top of the register "those former railroad employees entitled to priority under applicable provisions of law, including this chapter." If the only persons who were entitled to be on the register were former Conrail employees and others with preferential hiring rights, there would be no need for Congress to place them at the top of the register, since these persons would be the only ones on the register. Second, Section 797c(b) specifically identifies another subset of employees, those formerly employed by Conrail. This language strongly suggests that the term "employee," as used in Section 797c was intended to apply to more than just former Conrail workers.
 
 
 27
 This conclusion is bolstered by the number of times in the Act that the term "employees of the Corporation" is used.[7] This indicates that Congress intentionally differentiated between employees of the Corporation and employees in a more general sense. To read the term "employees" to mean only employees of Conrail would be to render the phrase "of the Corporation," mere surplusage each time it is used in the statute. See, e.g., 45 U.S.C. § 797(a), (c); § 797g(a), (c). When interpreting a statute, the court is to give effect to each word of the statute if at all possible. Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); In re Vause, 886 F.2d 794, 801 (6th Cir.1989); Fulps v. City of Springfield, 715 F.2d 1088, 1093 (6th Cir.1983). Thus, we conclude that the plaintiffs were part of the class to be protected by Section 797c and have standing to bring an action to enforce their rights under that provision.[8]
 
 2. Jurisdiction of the District Court
 
 28
 As noted above, the district court held that since the dispute involved in this case was subject to mandatory arbitration, but was never arbitrated, the court lacked subject matter jurisdiction to entertain plaintiffs' claims. The procedures that are to be followed to enforce Section 797c rights are outlined in Section 797c(g), which provides,
 
 
 29
 Any dispute, grievance, or claim arising under this section, ... shall be subject to resolution in accordance with the following procedures:
 
 
 30
 (1) Any employee with such a dispute, grievance, or claim may petition the Board to review and investigate the dispute, grievance, or claim.
 
 
 31
 (2) The Board shall investigate the dispute, grievance, or claim, and if it concludes that the employee's rights under this section, ... may have been violated, the dispute, grievance, or claim shall be subject to resolution in accordance with the procedures set forth in section 153 of this title.
 
 
 32
 (3) In the case of any violation of this section, ... the Adjustment Board (or any division or delegate thereof) or any other board of adjustment created under section 153 of this title shall, where appropriate, award such relief, including back pay, as may be necessary to enforce the employee's rights.
 
 
 33
 Section 153 of Title 45 created the National Railroad Adjustment Board, and established a system for arbitration of disputes between rail employees and their employers.
 
 
 34
 By its own terms, Section 797c expired on August 13, 1987. Thus, as of that date the RRB ruled that it no longer had the authority to investigate and make findings about alleged violations of the section. Nevertheless, we hold that this statutory sunsetting provision does not leave claimants in the position of these plaintiffs unable to enforce their rights. Section 797c created substantive rights, the violation of which could result in the awarding of relief. The fact that the scheme to enforce those rights has expired does not render the substantive rights a nullity. This proposition has been codified in the general savings clause, 1 U.S.C. § 109, which provides, "The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." See also United States v. Empire Gas Corp., 547 F.2d 1147, 1154-55 (Temp. Emer. Ct.App.1976), cert. denied, 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 592 (1977). This savings provision clearly indicates that plaintiffs' substantive rights are to be enforced regardless of the expiration of the particular mechanism provided for their enforcement.
 
 
 35
 The complaint against CSX filed by these plaintiffs in the district court alleged violations of substantive rights to which plaintiffs were entitled under a federal statute. In general, federal district courts have jurisdiction to entertain suits brought to enforce federal statutory rights. See 28 U.S.C. § 1331. In this particular instance, however, Congress had assigned to the RRB the responsibility to investigate and make factual findings on claims relating to violations of employees' rights. Congress also provided a right to have those claims arbitrated if the RRB found that the person's rights may have been violated, and vested jurisdiction in the district courts to review those arbitration decisions. 45 U.S.C. § 153(q). Upon the expiration of Section 797c, the RRB refused to investigate the alleged violations of plaintiffs' rights, because it erroneously interpreted the statute to mean that it did not have the continuing authority under the statute to perform an investigation or make findings. Therefore, eleven of the plaintiffs, all those but Faunce, appeared to have no right to proceed to arbitration.
 
 
 36
 When plaintiffs brought their claim to federal district court, that court concluded that it did not have jurisdiction to hear plaintiffs' claims because they did not follow the appropriate procedures before coming to federal court. The plaintiffs' failure to use this statutorily prescribed procedure, however, was based not on their own choice, but rather on the RRB's erroneous conclusion that it had no authority to entertain their claims.[9] The district court's conclusion that it lacked jurisdiction compounded the RRB's error because its effect was to permit the Board, by erroneously interpreting the statute, not only to terminate the plaintiffs' rights under that statute, but in addition, to deprive the district court of jurisdiction and, implicitly, to render the Board's own action unreviewable.
 
 
 37
 Because, as we have now held, the plaintiffs did have substantive rights under the Act, had the RRB been correct that it no longer had the authority to perform the investigation and make the findings prerequisite to plaintiffs' right to pursue their claims in arbitration, the plaintiffs could have asserted a due process claim against the RRB. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (failure of state agency to convene investigatory hearing within procedural time limit did not deprive aggrieved party of the right to have his claim heard); see also Ruffin v. Division Three, Nat'l R.R. Adjustment Bd., 368 F.Supp. 990, 995 (E.D.Pa.1973) (when Adjustment Board refuses to decide an issue properly presented to it, which would constitute a failure to fulfill the Board's duties, a court may compel the Board to effect a final disposition of grievances) (dicta). In such a suit, plaintiffs could have sought to force the RRB to perform the investigation and make findings as required by the Act. However, the RRB was incorrect; it did have the authority, and indeed the duty, to investigate plaintiffs' claims. Since the RRB had already made factual findings as to plaintiff Faunce, which findings are equally applicable to the remaining eleven plaintiffs, those plaintiffs did not need to compel the RRB to make factual findings. Thus, it was permissible for them to pursue their claim against CSX in the federal district court under 28 U.S.C. § 1331. It would be anomalous indeed if the district court could have jurisdiction to review what the arbitrator decided on plaintiffs' claims, 45 U.S.C. § 153(q), but not have jurisdiction over a decision that deprived the plaintiffs of their right to have their claims arbitrated.
 
 
 38
 We have essentially concluded that there was only one narrow issue before the district court on plaintiffs' 797c claim: were the plaintiffs entitled to have the RRB determine whether their rights may have been violated. As we explained above, they were so entitled. The record also clearly demonstrates that the RRB's conclusion that plaintiff Faunce's rights may have been violated because of CSX's failure to report vacancies is equally applicable to the other plaintiffs. Therefore, there is no need for the eleven remaining plaintiffs to seek the assistance of the RRB. The only remaining question then, is who must decide the remaining matters with respect to plaintiffs' claims. We conclude that by the terms of Section 797c(g) the plaintiffs' claims are subject to arbitration under the provisions of 45 U.S.C. § 153.
 
 
 39
 Under Section 797c, once the preliminary determination has been made that a claimant's rights "may have been violated", the statute provides that an adjustment board is to arbitrate the claim. Arbitration is therefore the proper method of resolution of plaintiffs' claims against CSX. In holding that plaintiffs' claims should be remanded to an arbitrator, we rely upon the reasoning of the Eighth Circuit in Beardsly v. Chicago & North Western Transp. Co., 850 F.2d 1255 (8th Cir.1988), cert. denied, 489 U.S. 1066, 109 S.Ct. 1340, 1341, 103 L.Ed.2d 810 (1989). In Beardsly, one group of plaintiffs asserted that although they possessed preferential hiring rights under Section 105 of the Rock Island Railroad Transition and Employee Assistance Act, 45 U.S.C. § 1004, the defendant violated that Act by not hiring them. The railroad argued that because the statute that provided for arbitration of Section 1004 claims (45 U.S.C. § 797c(g)) had expired on August 13, 1987, the appellants' right to arbitration ceased to exist. 850 F.2d at 1272. The court of appeals disagreed.
 
 
 40
 The court reviewed the legislative history of both the substantive provision, Section 1004, and the sunsetting provision, Section 797c(f), and concluded that "the sunsetting provision of [Section 797c] was intended to eliminate the Central Register of Railroad Employment administered by the Railroad Retirement Board (RRB) and not to cut off the right to arbitration for disputes concerning preferential hiring." 850 F.2d at 1272. Although the present case does not involve a dispute over preferential hiring, we find no reason to conclude that the arbitration provision would expire for certain types of claims, but remain extant for others. As the court in Beardsly noted, it was the existence of the Register that Congress intended to limit. Thus, the district court should order that an adjustment board hear plaintiffs' claims. Cf. American President Lines, Ltd. v. S. Woolman, Inc., 239 F.Supp. 833, 838 (S.D.N.Y. 1964) (noting the general principle in contract-based arbitration cases that "arbitration of a controversy which arose prior to the expiration of a contract will be enforced after expiration").
 
 
 41
 Plaintiff Faunce, however, presents a different factual situation from the other plaintiffs. As to him, the RRB had already made and notified him of its final determination that his rights may have been violated. All that remained for him to do was to submit his claim to the Adjustment Board. See 45 U.S.C. § 153; see also Antonioli v. Lehigh Coal & Navigation Co., 47 F.R.D. 198, 200-01 (E.D. Pa. 1969) (under Section 153 (first) the employee can prosecute his own claim before the Adjustment Board); Ruffin v. Brotherhood of Ry. & S.S. Clerks, Freight Handlers & Station Employees, 314 F.Supp. 1365, 1371 (E.D.Pa.1970) (same). However, Faunce did not do so, but came instead into the district court.[10] Therefore, we will REMAND his claim to the district court so that it may determine whether or not the release he executed was valid. If it is valid, his claim will be considered settled and dismissed. If it is not valid, Faunce's claims must be dismissed for lack of jurisdiction. Whether his claim would still be arbitrable under Section 153 is not before us at this juncture.
 
 
 42
 CSX also argues that the plaintiffs' failure to petition the Board before the statutory provisions expired is fatal to their claims. (Appellee CSX's Brief, at 20). Since the substantive rights created by Section 797c did not expire, we reject this contention as too narrow a reading of the statute's remedial provisions. We note, however, that this conclusion does not, as a matter of law, preclude the assertion of laches as a defense. We express no opinion on the laches question as that is a matter for the arbitrator to address.
 
 
 43
 The parties do not agree on what efforts the plaintiffs made in notifying the Railroad Retirement Board of their complaint against CSX. Plaintiffs assert that each of them made efforts from 1984 through 1987 to inform the RRB that CSX had failed to report its vacancies. CSX contends that each was required to file a written petition to the Board. The district court did not resolve this dispute because it held that plaintiffs failed to state a claim as a matter of law. Because this matter will be remanded for arbitration, we find it unnecessary to resolve this factual dispute. This matter, along with CSX's claims that plaintiffs are barred by laches and the statute of limitations, may be presented to the arbitrator. See Beardsly, 850 F.2d at 1273-74.
 
 
 44
 The district court's dismissal of plaintiffs' claims against CSX is REVERSED and REMANDED for further proceedings in accordance with this opinion.
 
 APPENDIX
 
 45
 § 797C. Central register of railroad employment
 
 
 46
 (a) Register
 
 
 47
 (1) The Railroad Retirement Board (hereafter in this section referred to as the "Board") shall prepare and maintain a register of persons separated from railroad employment after at least one year of completed service with a railroad who have declared their current availability for employment in the railroad industry. The register shall be subdivided by class and craft of prior employment and shall be updated periodically to reflect current availability.
 
 
 48
 (2) Each entry in the register shall include, or provide access to, basic information concerning the individual's experience and qualifications.
 
 
 49
 (3) The Board shall place at the top of the register those former railroad employees entitled to priority under applicable provisions of law, including this chapter.
 
 
 50
 (b) Corporation employees
 
 
 51
 As soon as is practicable after August 13, 1981, the Corporation shall provide to the Board the names of its former employees who elect to appear on the register and who have not been offered employment with acquiring railroads.
 
 
 52
 (c) Vacancy notices; warning; civil penalty
 
 
 53
 (1) Each railroad shall timely file with the Board a notice of vacancy with respect to any position for which the railroad intends to accept applications from persons other than current employees of that carrier.
 
 
 54
 (2)(A) As soon as the Board becomes aware of any failure on the part of a railroad to comply with paragraph (1), the Board shall issue a warning to such railroad of its potential liability under subparagraph (B).
 
 
 55
 (B) Any railroad failing to comply with paragraph (1) of this subsection after being warned by the Board under subparagraph (A) shall be liable for a civil penalty in the amount of $500 for each subsequent vacancy with respect to which such railroad has so failed to comply.
 
 
 56
 (d) Placement
 
 
 57
 The Board shall, through distribution of copies of the central register (or portions thereof) to railroads and representatives of classes or crafts of employees and through publication of employment information derived from vacancy notices filed with the Board, promote the placement of former railroad employees possessing requisite skills and experience in appropriate positions with other railroads.
 
 
 58
 (e) Employment applications
 
 
 59
 In addition to its responsibilities under subsections (a) through (d) of this section, the Board shall facilitate the filing of employment applications with respect to current vacancies in the industry by former railroad employees entitled to priority under applicable provisions of law, including this chapter.
 
 
 60
 (f) Expiration
 
 
 61
 The provisions of this section shall cease to be effective on the expiration of the 6-year period beginning on August 13, 1981.
 
 
 62
 (g) Resolution of disputes
 
 
 63
 Any dispute, grievance, or claim arising under this section, section 797b of this title, section 907 of this title, or section 1004 of this title shall be subject to resolution in accordance with the following procedures:
 
 
 64
 (1) Any employee with such a dispute, grievance, or claim may petition the Board to review and investigate the dispute, grievance, or claim.
 
 
 65
 (2) The Board shall investigate the dispute, grievance, or claim, and if it concludes that the employee's rights under this section, section 797b of this title, section 907 of this title, or section 1004 of this title may have been violated, the dispute, grievance, or claim shall be subject to resolution in accordance with the procedures set forth in section 153 of this title.
 
 
 66
 (3) In the case of any violation of this section, section 797b of this title, section 907 of this title, or section 1004 of this title, the Adjustment Board (or any division or delegate thereof) or any other board of adjustment created under section 153 of this title shall, where appropriate, award such relief, including back pay, as may be necessary to enforce the employee's rights.
 
 
 
 [1]
 The actual number of vacancies is not material to our discussion. The RRB eventually determined that at least 41 vacancies were not reported
 
 
 [2]
 The statutory note to Federal Rule of Appellate Procedure 3(c) states that several cases have held that "so long as the function of notice is met by the filing of a paper indicating an intention to appeal, the substance of the rule has been complied with." This Court's decision in Drayton v. Jiffee Chem. Co., 591 F.2d 352 (6th Cir.1978), is not to the contrary. In Drayton, the court held that it did not have jurisdiction to address plaintiffs' loss of society claim because the notice of appeal specifically limited itself to their claims for punitive damages and necessary services. 591 F.2d at 361 n. 10. In the present case, plaintiffs' notice of appeal specifically referenced the February 14, 1991 Order, which had no existence separate from the previous October 30, 1990 Order
 
 
 [3]
 This claim is independent of plaintiffs' claim for breach of contract against the Union. The plaintiffs concede that their breach of contract claim against the Union, and with it the claim for breach of the duty of fair representation with respect to that claim, are barred by the statute of limitations. (Appellants' Brief, at 31 n. 14)
 
 
 [4]
 Other cases cited by plaintiffs do not support their position. This court in Storey v. Local 327, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, 759 F.2d 517 (6th Cir.1985), held that the plaintiffs stated a cause of action for breach of duty of fair representation against their union by alleging that the union failed to represent them fairly in the negotiation of a collective bargaining agreement. Similarly, in Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local No. 14, 453 F.2d 1018 (9th Cir.1972), the court stated that the union had a duty of fair representation because "most of the allegations of this complaint 'concern' matters related to the negotiation or administration of the collective bargaining agreement." Id. at 1023
 
 
 [5]
 Nearly every portion of Section 797c is relevant to our discussion of the issues in this case. For this reason, it is set forth in its entirety in the Appendix to this Opinion
 
 
 [6]
 Although CSX relies on aspects of the statute's legislative history to support its argument, since we find the language of the statute to be unambiguous, we have no occasion to reach the legislative history
 
 
 [7]
 Employees of "the Corporation" means employees of "Conrail." 45 U.S.C. § 702(5)
 
 
 [8]
 CSX also contends that Plaintiffs failed to demonstrate that they "declared their current availability for employment" as required by Section 797c(a)(1), so they have failed to state a claim. Although the Plaintiffs' reporting to the RRB in order to establish eligibility to collect unemployment benefits may itself satisfy this requirement, it is unnecessary for us to so hold. Declaration of availability is not a prerequisite to showing standing
 
 
 [9]
 Plaintiffs' failure to submit their claims to arbitration does not alter this conclusion. Other than Faunce, the plaintiffs had no right to invoke the procedures of Section 153 because the RRB had not made the preliminary determinations that their rights may have been violated. Thus, their failure to submit their claims to arbitration did not deprive the district court of jurisdiction in this matter
 
 
 [10]
 Obviously, had Faunce attempted to use the arbitration procedures of Section 153 and been rebuffed by the adjustment board (similarly to the other plaintiffs' being turned away by the RRB) then he could have pursued a claim against the adjustment board to compel them to arbitrate his claim. See Ruffin v. Division Three, Nat'l R.R. Adjustment Bd., 368 F.Supp. 990, 995 (E.D.Pa.1973) (when Adjustment Board refuses to decide an issue properly presented to it, which would constitute a failure to fulfill the Board's duties, a court may compel the Board to effect a final disposition of grievances) (dicta)